# CHARLESTON.

## WILSON *v.* JOHNSON.

Submitted June 12, 1912.     Decided September 30, 1913.

1.  BROKERS—*Action on Contract—Sufficiency of Evidence.*

     The verdict in this case was not plainly unwarranted by the evidence considered most favorably in support thereof, and the court below erred in setting it aside and awarding defendant a new trial. (p. 743).

2.  NEW TRIAL—*Grounds—Insufficiency of Evidence.*

     Though the evidence be contradictory the verdict should not be set aside or interfered with, if, when considered most favor-

ably in support of the verdict, it does not still appear plainly unwarranted by the evidence.  (p. 746).

3. . APPEAL AND ERROR—*Granting New Trial—Ground for Reversal.*

Though according to prior decisions of this and other courts it takes a stronger case in an appellate court to reverse an order granting, than one refusing a new trial, nevertheless, that rule in its application must be properly confined to cases where the evidence is not only conflicting, but also against the weight of the evidence, and the evidence is wholly insufficient to support the verdict.  (p. 746).

Error to Circuit Court, Cabell County.

Action by W. H. Wilson against J. W. Johnson.  Judgment for the defendant and plaintiff brings error.

*Reversed and Rendered.*

*Simms, Enslow & Staker,* for plaintiff in error.

*Williams, Scott & Lovett,* for defendant in error.

MILLER, JUDGE:

On appeal from the judgment of a justice plaintiff obtained a verdict for two hundred dollars, claimed to be due him from defendant, as per contract, for procuring one Dawkins to sell defendant a tract of timber land.

On motion of defendant the circuit court set aside the verdict and awarded him a new trial, and plaintiff has brought the case here to have that judgment reviewed, and asks at our hands judgment on the verdict in his favor, the same judgment which he contends the court below should have pronounced.

No question of law is in controversy.  The simple question presented is, Does the evidence warrant the verdict for plaintiff?  Plaintiff proved by his own evidence that a year or two before his alleged contract with defendant, he had negotiated a sale of the tract in question to W. H. Dawkins, or the W. H. Dawkins Lumber Company; that after that nearly every time he met defendant the latter said something to him about that land, that one day when in defendant's office he said to him "Why not go and buy the timber now, or the land?  Why not make the deal?  It is not too late; they have not cut the tim-

ber; it is all there," and that defendant replied that, "Mr. Dawkins won't talk to me about trading on this property;" that he replied "Why I believe I could induce Mr. Dawkins to sell to you." Whereupon defendant answered: "Well, Mr. Wilson, if you will do that, I will pay you $200.00 cash." Plaintiff swears he replied to that proposition: "Understand, if you will agree to pay $200.00, I will go down and talk to Mr. Dawkins and I will try and induce him to trade with you, but I am not to make up any papers; I am to set no price, because I am well acquainted with Mr. Dawkins and we have had other dealings with him and I will try to persuade him to sell you this land." Plaintiff further swears that after making this bargain he got on the car and went to see Dawkins, and that after some persuasion, the latter agreed to sell the land to Johnson, but that no price was mentioned; that he came back and reported to defendant what Dawkins had agreed to do, and that he then considered his contract fulfilled; that a short time afterwards Johnson and Dawkins closed a bargain for the land, and that shortly after that he demanded of defendant the $200.00 to which the latter replied: "Mr. Dawkins charged me so much for the land I couldn't afford to give you $200.00" He further swears that he left the matter stand in that way until defendant sold the soft timber to another company and he heard he had gotten a big price for it, when he again demanded his $200.00, and defendant again refused to pay him. Wherefore this suit.

Plaintiff is corroborated by his witness Dawkins to the extent that the latter swears that he remembers the occasion when plaintiff came to his office and asked him to sell the land to Johnson. He did not remember all that was said, thought very little was said, but that plaintiff told him Johnson wanted to buy the land and wanted to know if he would go and see Johnson and have a talk with him, that he answered that he had bought the land for an investment and was going to hold it for a while; that he thought it would bring him more money, but would sell if he could get his price. As to the result of Wilson's visit and what influenced him to go and see Johnson and to finally sell him the land, the witness swears that a short time after Wilson called on him he went to see defendant, and further testified as follows: "Q. What caused you to go to see

Mr. Johnson? A. Why, I understood he wanted to buy it and I was up here in Huntington and I dropped in to see him. Q. You understood from Mr. Wilson, or he told you he wanted to buy it and in pursuance of his request you went to see Mr. Johnson? Is that right? A. I suppose that it was Mr. Wilson's request. Taking the length of time it has been, I wouldn't be sure. Mr. Wilson was there and talked to me and I saw Mr. Johnson afterwards. The deal was made after Mr. Wilson was there, I know that. Q. Did Mr. Wilson request you to go and see Mr. Johnson? A. Yes, sir, he asked me to go and see him. * * * * Q. (By the Court) Had Mr. Johnson before that been there to purchase this land from you? A. I think at one time he asked me something about it, but I don't remember what time it was."

Defendant, who was his only witness, swears, positively, that he never made the alleged contract with plaintiff. He testifies moreover, that before Dawkins acquired this tract, he was about to buy it from the same persons from whom Dawkins bought it, and intimates that having given plaintiff information of this purpose, the latter intercepted him in some way and procured the owners to sell to Dawkins; that on the day Dawkins closed his contract he asked him if he would sell him the tie stumpage, and that Dawkins replied he would not; that a week or ten days after that Wilson came to his office and said he could buy the boundary of timber, the tie stumpage; that he thought he could induce Dawkins to sell him the tie stumpage of oak for ties, and that he said to him, "Mr. Wilson, if you will induce Mr. Dawkins to sell me this boundary of timber, by the tie," (at prices which he stipulated) "I will give you $200.00 to make that trade." He further swears that at the same time he dictated to his stenographer a letter to Wilson, a copy of which he produced, stating dimensions and prices to be paid for the ties, and that the contract covered by this letter was the only proposition made or agreement had with plaintiff relative to this timber, and that plaintiff had never complied with that contract.

Plaintiff admits having received such a letter from defendant, some time before he made the contract sued on, but says he paid no attention to it, never presented the proposition to Daw-

kins. He is corroborated in this statement by Dawkins to the extent that the latter swears, that he does not believe Wilson ever proposed buying the tie stumpage, and that he does not think he ever showed him Johnson's letter, that he does not remember that he ever saw it. The evidence of this witness also tends to show that the defendant had attempted once or twice before plaintiff claims to have made his contract to buy from Dawkins, either the timber or tie stumpage, without success.

The foregoing is substantially all the evidence on the material facts, and presents the question whether the court below, within prescribed rules, was justified in denying plaintiff the fruits of his verdict.

The rule of law governing trial courts in such cases, as declared in the decisions of this court and elsewhere, is that though the evidence be contradictory the verdict of the jury should not be interfered with, if when considered most favorably in support of the verdict it does not still appear plainly unwarranted by the evidence. *Gwynn* v. *Schwartz,* 32 W. Va. 487; *State* v. *Cooper,* 26 W. Va. 338. The reason for this rule, founded in ancient law, is that when the case turns on the weight of the testimony, or inferences and deductions from facts proven, the jury and not the court are exclusively and uncontrollably the judges. *State* v. *Cooper, supra; Mitchell* v. *United States Coal & Coke Co.,* 67 W. Va. 480.

This rule we think particularly applicable to the case here. The question of the contract depended for the most part on the conflicting oral evidence of the witnesses, with no inconsiderable corroboration of plaintiff by his witness Dawkins. Certainly the trial court, though differing from the jury in the weight and credibility of the evidence of the witnesses, could not say the verdict was plainly not warranted by the evidence, or that manifest injustice had been done.

But it is contended that as the court below on conflicting evidence set aside the verdict, the rule declared in *Miller* v. *Insurance Co.,* 12 W. Va. 116, *Reynolds* v. *Tompkins,* 23 W. Va. 229, and lastly in *Varney & Evans* v. *Lumber & Mfg. Co.,* 64 W. Va. 417, should prevail, namely, that it takes a stronger case in an appellate court to reverse an order granting, than one refusing a new trial, and that as the court below set aside

the verdict and awarded a new trial, that judgment should not be disturbed.    The rule invoked seems well recognized not only in our cases but in the decisions of many other states.    3 Am. Dig. 1714, and cases there collated.    But the rule must be properly interpreted and applied.    It may not be used to cover the error of the trial court in abusing its reasonable discretion, in awarding new trials by invading the province of the legal triers of fact, and because differing from them in the inferences or conclusions drawn from conflicting oral evidence substitute its judgment for that of the jury.    As stated in *Miller* v. *Insurance Company, supra,* the rule is applicable where the evidence is *conflicting* and the *verdict is against the weight* of the evidence.    As stated in 3 Am. Dig. 1714, *supra,* the rule is: "A stronger case must be made to justify the disturbance of an order granting a new trial *for insufficiency* of evidence than where one had been refused."

It cannot be truly said that the evidence of plaintiff in this case was insufficient to warrant the verdict, or that it was so overborne by the evidence of defendant as to evince corruption, partiality or prejudice on the part of the jury, justifying the court below in denying plaintiff the benefits of that verdict.

Our conclusion is to reverse the judgment below and enter judgment here on the verdict for plaintiff.

*Reversed and Rendered.*