# CHARLESTON.

STEPHEN A. D. SHIPLEY *v.* THE VIRGINIAN RY. CO.

Submitted September 21, 1920.    Decided October 5, 1920.

1.  COURTS—*Circuit Court of Kanawha County May Review Order of Court of Common Pleas Awarding a New Trial in Advance of New Trial.*

    The Circuit Court of Kanawha County has jurisdiction by writ of error to review an order of the Court of Common Pleas of that county, awarding a new trial, in advance of the new trial and in the absence of a final judgment in the case. (p. 141).

2.  SAME—*Cause Transferred from Court of Common Pleas of Kanawha County to Circuit Court Thereof May be Heard Upon the Original Record.*

    The hearing of a case transferred from the Court of Common Pleas of said county into the Circuit Court thereof, by writ of error, may, by virtue of the statute creating the former court, be heard upon the original record, and a transcript of the oral evidence taken in such case, certified by the official stenographer of the trial court, constitutes a part of such record, by express provision of said statute.  (p. 141).

3.  EXCEPTIONS, BILL OF—*Skeleton Bill Held to Make Evidence Certified by Its Stenographer a Part of Case.*

    A bill of exceptions taken in said Court of Common Pleas, which does not copy the evidence, but says the evidence and the proceedings were recorded by the official stenographer,

"and are in the words and figures following to-wit", and, further, immediately afterwards, that "the foregoing was all the evidence" in the case, makes the evidence certified by the stenographer a part of it.  (p. 141).

4.   APPEAL AND ERROR—*Propriety of New Trial Granted by Special Judge Who Did Not Preside at Trial Depends Solely on the Record Thereof.*

An award of a new trial by a special judge who did not preside at the trial of the case is tested, as to its propriety, solely by the record of the trial as preserved and is not aided or strengthened by any presumption arising from supposed personal or judicial knowledge of the character, appearance and demeanor of the parties, witnesses and jurors.  (p. 143).

5.   NEW TRIAL—*Verdict Cannot be Set Aside Because Inadequate Unless it Results from Jury's Prejudice, Corruption or Mistake.*

To warrant the setting aside of a verdict on the ground of mere disparity between the amount thereof and what it might have been, the difference must be great enough to make it apparent that the meagerness of the award was the result of prejudice, partiality, passion, corruption or mistake on the part of the jury.  (p. 145).

6.   SAME—*Verdict in Action Under Federal Employers' Liability Act Less Than Evidence Would Have Sustained Cannot be Disturbed as Inadequate.*

If, in an action for damages for a personal injury, the evidence pertaining to the right of recovery is conflicting and sufficiently probative in each direction, to sustain a verdict for either plaintiff or defendant, a verdict for the plaintiff in which the damages are assessed at a sum very much less than the evidence, facts and circumstances would have sustained, if awarded, cannot be disturbed by the court on the ground of inadequacy.  (p. 145).

7.   SAME—*In Action Under Federal Employers' Liability Act Held That Verdict Could Not be Set Aside as Inadequate.*

If, in an action for damages for a personal injury, there is evidence tending to prove permanent and total deprivation of the earning power of the plaintiff and also evidence, facts and circumstances constituting a reasonable basis for jury belief that total disability will not be permanent, and the verdict is much smaller than it should have been, if founded upon the theory of permanent and total disability, the trial court is not warranted in granting a new trial on the theory of inadequacy of the verdict.  (p. 145).

8.   SAME—*Verdict Much Smaller Than One Founded on Theory of*
     *Same Injury to Normal Person Held not Inadequate.*

> If, in such an action, the evidence would sustain the theory
> of permanent and total disability, but would also sustain a
> finding of incurable disease in the plaintiff, which justifies the
> view that his expectation of life and earning power is far be-
> low that of a person whose physical condition is normal, a
> verdict therein very much smaller than one founded upon
> the theory of such an injury to a normal person should be,
> cannot be disturbed on the ground of inadequacy.   (p. 152).

(WILLIAMS, PRESIDENT, absent).

Error to Circuit Court, Kanawha County.

Action by Stephen A. D. Shipley against the Virginian Rail-
way Company.   A verdict for plaintiff in the court of common
pleas of Kanawha county was set aside, and plaintiff granted a
new trial on the ground of inadequacy of the verdict.   The cir-
cuit court on writ of error reversed such order, reinstated the
verdict, and rendered judgment thereon for plaintiff, and plain-
tiff brings error.                                    *Affirmed.*

*Lon T. Pilchard, L. L. Dunbar* and *Chas. J. Hogg,* for plain-
tiff in error.

*Brown, Jackson & Knight, Williams, Loyall & Tunstall* and
*Hall, Wingfield & Apperson,* for defendant in error.

POFFENBARGER, JUDGE:

The ultimate purpose of this writ of error is retention of the
benefit of an order of the Court of Common Pleas of Kanawha
County, setting aside a verdict for the sum of $5,000.00, ren-
dered in an action for a personal injury, brought under the Fed-
eral Employers' Liability Act, and granting the plaintiff a new
trial, on the ground of inadequacy of the verdict.   On a writ
of error from the circuit court of said county, that order was
reversed, the verdict re-instated and a judgment rendered there-
on in favor of the plaintiff.   This writ of error goes to the judg-
ment of the circuit court.

The writ of error from the circuit court was not prematurely
awarded.   In other words, there was jurisdiction in that court
to grant a writ of error to the judgment of the court of common

pleas, setting aside the verdict and awarding a new trial, before such trial occurred. Whatever the law may be in other states, there can be no question about the jurisdiction of the Circuit Court of Kanawha County, in this instance. The statute creating the Court of Common Pleas of Kanawha County expressly gives a right of review, in such cases. Acts of 1915, ch. 109, sec. 17, par. 9. The terms of that statute are express, clear and unequivocal and its validity is in no way questioned. It says the writ shall lie "without waiting for the new trial."

A presumption in favor of the correctness of the decision of the court of common pleas would have sustained it in the circuit court and precluded right in that court to reverse it, if the evidence adduced on the trial in the former court had not been before the latter; for it is not pretended nor suggested that the verdict was set aside upon any ground other than inadequacy of the damages assessed, and the correctness of the verdict in that respect depended, of course, upon the evidence. To get rid of a verdict, it is necessary to show that it is wrong, and, ordinarily, that cannot be done without a test thereof by the evidence. *Schwarzchild & Sulzberger Co.* v. *C. & O. Railway Co.,* 59 W. Va. 649; *Wood* v. *King,* 59 W. Va. 418; *Dudley* v. *Barrett,* 58 W. Va. 235; *Coal & Coke Railway Co.* v. *Joyce et al.,* 58 W. Va. 544; *McKendree* v. *Shelton,* 51 W. Va. 516. Since the evidence in the case was before the circuit court and contstituted a part of the record brought up to that court by the writ of error, this legal proposition cannot be successfully invoked by the plaintiff in error. The record brought to this court contains the declaration and all of the orders entered in both of the lower courts and, in addition thereto, what may be termed a skeleton bill of exceptions, designated "Bill of exceptions No. 1," and an order; entered in vacation of the court of common pleas, by the judge of that court, makes that bill a part of the record of the case. It is signed by the special judge who passed upon the motion for a new trial, and it sets out in full all of the instructions given and refused and the proceedings had upon the motion to set aside the verdict, but the evidence is not set out in it at length. As to the evidence it says: "The evidence given to the jury and the proceedings had upon the trial were recorded

by the official stenographer of the court, and are in the words and figures following to-wit." Though it contains no note or direction, saying: "Here insert the evidence" or the like, as is usual in a skeleton bill of exceptions, the language quoted from it is followed by this sentence: "And the foregoing was all the evidence offered or heard on the trial of said case." As to all other matters it is full and complete, but, as to the evidence, it is a skeleton bill. To say it was not the intention of the judge who signed the bill of exceptions to have the evidence certified by the stenographer or reporter read into it at this point as a part of it, would deny to the terms of this paper their plain, ordinary and unequivocal meaning, as well as their force and effect. It says the evidence and the proceedings were reported by the official stenographer of the court, and assumes that they are in it and immediately follow in order. The next sentence treats the evidence as having been written into it, for it says the foregoing was all the evidence. That it was not actually written in is immaterial, for the sufficiency of a skeleton bill of exceptions has been repeatedly declared by this court. *Wilson* v. *Shrader,* 73 W. Va. 105; *Marshall* v. *Stalnaker,* 70 W. Va. 394; *Rowland Land Co.* v. *Barrett,* 70 W. Va. 703; *Cable Co.* v. *Mathers et al.,* 72 W. Va. 807; *Jackson* v. *Railway Co.,* 65 W. Va. 415; *DeBoard* v. *Camden Interstate Railway Co.,* 62 W. Va. 41.

Though the evidence was obviously made a part of the record it was not necessary formally to make it such, in order to bring it before the circuit court. The statute creating the Court of Common Pleas, ch. 109, Acts of 1915, dispenses with the necessity of a bill of exceptions for the purposes of review on an appeal or writ of error in the circuit court. Sec. 18 thereof provides for a hearing in that court on an appeal or writ of error, upon the original papers and the recorded orders and decrees in lieu of a transcript, and, in those instances in which oral testimony has been taken, upon a transcript of the evidence certified by the stenographer or other person taking the same, and expressly makes such transcript a part of the record. Its language is "a transcript thereof duly certified by the stenographer or other person taking the same shall be held and treated as a

part of the original papers. The defendant in error has caused to be sent up by the clerk of the circuit court such a transcript of the evidence in this case, and he certifies that it was a part of the bill of exceptions in the court of common pleas, and it is certified by the official reporter of that court.

The regular judge of the trial court having been prevented by illness from passing upon the motion for the new trial, it was acted upon by a special judge who, presumptively, did not hear the trial nor see and hear the witnesses, nor observe their conduct and that of the jury. He must have taken the record as we have it and as the circuit court had it and acted upon it. Hence, the reason sometimes assigned for discretion in the trial court, to grant a new trial, is lacking. This unusual circumstance is emphasized in the argument submitted for the defendant in error. Under our decisions, such discretionary power of a judge presiding at a trial, is very limited. In such cases, he has none at all, unless there is legal ground for a new trial. *Hodge* v. *Charleston Interurban Railroad Co.,* 79 W. Va. 174 *Rosenthal* v. *Fox,* 70 W. Va. 752; *Robinson* v. *Kistler,* 62 W. Va. 489. Observations respecting such discretion, found in the books, probably means no more than that the judge's decision as to the sufficiency of a ground urged for a new trial, when there is a condition calling for judgment as to the existence thereof, will not be disturbed by the appellate court. If an apparent and prejudicial error was committed in the course of a trial, there is no discretion in the court to refuse a new trial. If, on the other hand, there is not so much as a shadow of error in the proceedings, there is no discretion to grant one. But here, as in almost everything else, a clearly debatable question as to the existence and sufficiency of such ground may arise, and, in that event, it is within the jurisdiction of the trial court, and it is its duty, to pass upon it, and the appellate court ought not to disturb its ruling on that question, unless it can see that it is erroneous. Obviously, the solution of such a question sometimes depends, to some extent, upon the appearance and conduct of jurors, parties or witnesses, in the trial. It is equally apparent that a judge who did not preside at the trial was not influenced, in his disposition of the motion, by anything in the character,

appearance or demeanor of any of the actors therein. Considerably more than a year elapsed between the date of the verdict and the action on the motion for a new trial, and, in that period, the evidence was transcribed and made a part of the record. Hence, the special judge, in passing upon the motion for a new trial, had before him just what the circuit court had and this court has, and nothing more. It is manifest, therefore, that, when the judgment of the court of common pleas came before the circuit court for review, it was not in any degree sustained or supported by any presumption of the exercise of discretion by the judge who had rendered it. Both judgments are based solely upon the record, and, as both are entitled to respect, it is not perceived that there is now any weighty presumption in favor of the correctness of either of them; wherefore the inquiry must be whether the verdict, uninfluenced by either, is correct.

The plaintiff, a railroad engineer, suffered a paralytic stroke on the night of May 22nd, 1916, while at home and in bed. On awakening, at about one oclock, A. M., May 23rd, 1916, he found himself unable to move any portion of his left side. His physician, who reached him in a very short time afterwards, testified to this condition, and further said that the left side of his face was drawn slightly toward the right and that his speech was sluggish. About half an hour later, the patient was able to move his toes slightly and his motor sensation had improved a little. After treatment for several weeks, he went to St. Luke's Hospital at Richmond, Va., where he was subjected to a neurological examination by a specialist, which disclosed a definite loss of power in the left side, particularly in the left arm, an increase in the reflexes in that side, accompanied by other signs of pyramidal involvement, an abnormal blood pressure, a faint trace of albumen and a few casts in the urine and a negative result of the Wasserman blood test.

He attributes his paralysis to an injury suffered in a collision between the engine he was running and some cars, on a yard track, in the Princeton yards of the defendant company, on May 16, 1916, which collision he claims was occasioned by negligence of the yardmaster. His engine was drawing a freight

train in which there were both intrastate and interstate cars, on a railroad engaged in interstate transportation. . Coming to the yard, on the date mentioned, he stopped his train and announced his arrival and desire to enter the yards, by giving the usual signal.

Shortly afterwards, a signal light at the far end of the yard gave him permission to enter, and he started in on track No. 8. After having drawn his train from the main track on to track No. 8, the head brakeman cut the cars loose from the engine, and he started on down the track towards the round-house in which he was to leave the engine. But about one hundred yards from the east end of the yard, to which he was going, he saw something on the track which he took to be cars, and, at about the same time, he heard a noise which caused him to put his head out of the window. Immediately afterwards, a car struck his engine. The violent jar to which his engine was subjected by the collision threw his head against the side of the window with such force that he was knocked down on the seat and blinded until the second jolt aroused him and restored his sight. Although suffering from pain, he got down from his engine, and, after the obstructing cars had been removed, took it on to the round-house. He continued his work until the evening of the 22nd and there was no disability serious enough to interfere with his work, until the night of the 22nd. The trip to Richmond was in September, 1916. No effectual relief having been obtained there, the plaintiff's condition remained bad and a surgical operation was performed in December of that year, which gave him some relief. His skull was trephined and a portion of it, about an inch by three inches in size, was removed. Thereafter, the pain from which he had suffered ceased, and he got rid of convulsive affections of the left leg and arm. At the date of the trial, he was unable to do any considerable amount of manual labor. He said he was able to work for a short period at a time in his garden, but that his leg gave out under him and he had practically no use of his left hand. All of the expert witness regarded his affliction as being permanent.

That the collision in which plaintiff suffered injury to his head was occasioned by the negligence of the defendant acting

through its yard master, is not controverted. The ground of defense against liability in any amount is that that injury did not cause the paralysis. On this writ of error, however, this defense is not insisted upon, the defendant being willing to pay the judgment and end the litigation. Its contention is that, under all the circumstances disclosed, the verdict is adequate within the meaning of the law. The denial of liability, the evidence adduced in resistance thereof, the conflict in the evidence respecting the same and the alleged doubt as to its existence are invoked in argument as matters which the jury had the right to take into consideration in the assessment of the damages. In addition thereto, alleged evidence of contributory negligence on the part of the plaintiff is relied upon as an element of mitigation.

As to the cause of the paralysis, the expert witnesses were divided in opinion, three of them declining to say the injury to the head caused it, and the other two saying they thought it did. All were of the opinion that it could have been caused by high blood pressure and hardening of the arteries, both of which ailments the plaintiff is shown to have had after the accident. Whether he was so afflicted previously, does not appear. He had been apparently a strong, robust man, weighing over two hundred and thirty pounds, ordinarily. He had had no occasion to consult a physician and had believed himself to be in a perfectly sound condition. Shortly after he was stricken and just after he had taken medical treatment, his blood pressure was found to be between 160 and 165. At his age, it should have been about 140 or 145. In September, it was found to be 180 systolic and 90 diastolic. By a stipulation filed in the case, it was agreed that a neurological examination made, February 6, 1917, revealed a paresis of the left arm and left leg, moderate enlargement of the heart with an accentuated aortic second and moderate arterio sclerosis or hardening of the arteries; and that urinarlysis and the Wasserman blood test each resulted negatively. For the most part, the expert witnesses were unable to say whether the high blood pressure was pre-existent or was the result of the traumatic injury. They generally agreed that muscular contraction or convulsion more often char-

acterizes affection of the nerves by traumatic injury to the
brain than affection of the nerves by hemorrhage. All agreed
that arterio sclerosis sometimes produces hemorrhage of the
brain by rupture of a blood vessel; and that the resultant pres-
sure, when it happens, produces paralysis, either partial or gen-
eral, according to the location and extent of the rupture and
hemorrhage. The two physicians who were of the opinion that
the plaintiff's affliction was occasioned by the injury to his head
based their judgment, to a considerable extent, upon the history
of the case, the time and location of the injury, the development
and character of the paralysis, the pain in the region of the in-
jury, and the relief given by removal of a portion of the skull.
The others did not ignore it, however.

The evidence of contributory negligence, if any, is very slight.
The head-light on the plaintiff's engine at the time of the col-
lision was not in good condition. It was an oil lamp and the
wick was charred at the top and so short that it could not be
turned up and trimmed. The train had left Page, a point at
which there was a round-house, at about seven o'clock in the
morning, and the fireman lit the head-light at about 6 or 7
o'clock in the evening. The collision occurred on the yards at
about 9:30 of the same evening. A rule of the company, with
which the plaintiff was familiar, required enginemen to see that,
during darkness, the head-light and lamp signals were in good
condition and burning brightly. Another made them respon-
sible for the proper care and safe management of the engine;
proper condition of all tools and signal appliances; and exact ob-
servance of all signals and other precautions established for
safety of trains and avoidance of risks. An agreement between
the employees and the company, qualifying the rules, provided
that, at points at which round-house forces were employed, en-
gines, before starting on runs, should have rod-cups filled, fires
cleaned, and ash pans dumped and closed, and should be sup-
plied with coal, water and sand; that all tools and supplies
should be taken from and put on the engines; that head-lights,
cab-lights and signal lamps should be cleaned and lighted; and
that running boards, pilots and decks should be swept. Under
this agreement, it is insisted, that the plaintiff had the right to

presume that his head-light was in good condition when the engine left Page, and that, as the defect was not discovered until the fireman attempted to light the lamp and was unable to remedy the defect, he was not guilty of negligence respecting it. It is also contended that, having knowledge of the defective condition of the head-light, he could have procured materials with which to remedy it at Princeton, before entering the yards, and that it was his duty to do so. When the fireman discovered that a collision was imminent, he braced himself in a seat and thus escaped injury. It is argued that the plaintiff, instead of putting his head out of the window, should have done likewise, and that, if he had, he would not have been injured.

In the absence of disclosure in the pleadings and evidence, of a clear, firm and definite case for recovery and data for estimation of the amount thereof, very great latitude is allowed juries in the assessment of the damages. In cases of indeterminate damages, those in which the amount of the recovery cannot be measured by any definite rule, no court in any jurisdiction will set aside a verdict merely because it is either larger or smaller than the judge thinks it ought to have been. As to this, our decisions are firm and uniform. *Kennedy* v. *C. & O. Railway Co.*, 68 W. Va. 589; *Price* v. *C. & O. Railway Co.*, 40 W. Va. 271; *Goshorn* v. *Foundry Co.*, 65 W. Va. 250; *Given* v. *Diamond Shoe Co.*, 84 W. Va. 630, 101 S. E. 153; *Wilson* v. *Johnson*, 72 W. Va. 742. To warrant the setting aside of a verdict on the ground of mere disparity between the amount thereof and what it might have been, in cases in which there is no fixed rule for determination of the amount, the difference must be so great as to make it apparent that the verdict was the result of prejudice, partiality, passion or corruption on the part of the jury, or that they were influenced in their conclusion by some mistaken view of the case. There are comparatively few instances in which verdicts have been set aside on the ground of excessiveness, and there are still fewer in which they have been disturbed on the ground of inadequacy. It seems that, at common law, a verdict in an action of trespass could not be set aside at all for inadequacy. *Jackson* v. *Boast et al.*, 2 Va. Cas. 49. That defect was remedied at an early date in Virginia by statute. Revised.

Code of 1819, Vol. 1, p. 510.   But what is meant by prejudice, passion, partiality or mistake, justifying disturbance of a verdict for excessiveness or inadequacy, has never been very clearly defined in any of our decisions.   None of them indicates clearly what constitutes evidence of prejudice or partiality.   It is not so difficult to find what is meant by mistake, for there are many instances in which juries have rendered verdicts contrary to law upon proof of practically uncontroverted facts.   In other jurisdictions, however, decisions are found in which evidence of prejudice and passion within the meaning of the rule, are defined, not in terms, but in effect.   A manifest and flagrant disproportion between the verdict and the amount of damages clearly proved is evidence of passion and prejudice.   The extent of the required disproportion is indicated in the following cases: *Miliken* v. *City of New York,* 82 App. Div. 471, in which the jury awarded only $250.00, for permanent injury of a foot and ankle; *Anglin* v. *City of Columbus,* 128 Ga. 469, in which a verdict of only $100.00 was found, in an action for permanent injury to the spine; *Bagot* v. *Keith,* 2 Bays (S. C.) 466. in which the jury awarded only $1.00 for an outrageous assault and battery; *Hill* v. *Union Railway Co.,* 25 R. I. 565, in which only $200.00 was awarded, a sum less than would compensate the plaintiff for her loss of time, and just about equal to what she had expended for medical assistance; *Henderson* v. *St. Paul and Duluth Railroad Co.,* 52 Minn. 479, an action for a personal injury, permanent in its nature, in which the verdict was $250.00; *Taylor* v. *Howser,* 12 Bush (Ky.) 465, in which there was clear proof of a serious injury and the jury awarded only one cent; *Tathwell* v. *Cedar Rapids,* 122 Ia. 50, in which only $100.00 was allowed for a permanent injury.

In each of these cases, there was a practical denial of a clearly established right to a substantial recovery.   Though the damages, being indeterminate, could not be accurately ascertained, it is apparent that the jury had arbitrarily awarded practically nothing, under circumstances justifying and calling for a substantial amount.   This was regarded and held to be proof of improper conduct on their part in determining the amount of the verdict.   It was apparent that they had acted partially and

discriminatingly against the plaintiff and in favor of the defendant, and against the plain dictates of reason, law and justice. The verdicts were clearly contrary to the law and the evidence. The differences between the verdicts and the amounts the courts deemed the plaintiffs to be entitled to were manifestly not due to mere differences of opinion. They were due to failures, for some reason, on the part of the juries to perform their duties. In all such cases, it suffices to say, in general terms, that the jury must have been influenced by partiality, prejudice or mistake, and it is unnecessary for the court to undertake to determine just which it is. The rule governing such cases, as adduced from the decisions here referred to, requires a very great and palpable disproportion between the verdict and the right of recovery as disclosed by the evidence.

Evidence, facts and circumstances disclosed in a case, constituting what may have been, in the minds of the jury, the basis of a doubt as to right of recovery, seems to preclude power in the court to grant a new trial, on the ground of inadequacy, even though, as attested by the record, the verdict is inconsistent and amounts to a practical denial of right as indicated by the plaintiff's evidence. If a verdict awards only nominal damages and the state of the evidence is such that, if a verdict had been rendered for the defendant, instead of the plaintiff, the court could not have disturbed it, there is no right in the trial court to set it aside on the ground of inadequacy. *Wavle* v. *Wavle*, 16 N. Y. Sup. Court Rep. 125; *Hubbard* v. *Mason City*, 64 Ia. 245; *Young* v. *Great Northern Railway Co.*, 80 Minn. 123; *O'Malley* v. *Chicago City Railway Co.*, 33 Ill. App. 354; *Lovette* v. *City of Chicago*, 35 Ill. App. 570; *Ray* v. *Jeffries*, 86 Ky. 367; *Simrall* v. *Morton*, (Ky.) 12 S. W. 185.

On the right of recovery, dependent upon the cause of the paralysis, there is a degree of uncertainty, if not conflict in the evidence, making the case one proper for exclusive jury determination. From his weight and the nature of his employment, considered in the light of the expert testimony, the jury may have considered the plaintiff an apoplectic subject at the time of the paralytic stroke. He had been a locomotive engineer for a long pe-

riod of time and his weight was abnormal. Immediately after the stroke, his blood pressure was found to be considerably above normal. Still later, it was discovered that he had hardening of the arteries. One of the expert witnesses indicated, in his testimony, possibility of a very much higher blood pressure immediately before the stroke. Two of the medical witnesses declined to express any positive opinion as to the cause of the paralysis, but one of them was inclined to the belief that it more likely came from an internal hemorrhage of the brain, due to hardening of the arteries, than from the injury to the head. Still another was positive in the belief that it was due to that cause. On the other hand, two of them were clearly of the opinion that the paralysis was the result of the blow or injury. The relief given by the surgical operation tends to prove that the injury had something to do with the paralytic affliction in its later stages, at least. However, the surgeons found no evidence of a fracture of the skull, nor of disturbance of the brain. The probative value of the expert opinions and the facts and circumstances disclosed was for jury determination, unless there was something conclusive in their nature and tendency. *Coalmer v. Barrett,* 61 W. Va. 237; *State v. Sullivan,* 55 W. Va. 597; *Miller v. Insurance Co.,* 12 W. Va. 116; *Grayson's Case,* 6 Gratt. 712; *Sheff v. City of Huntington,* 16 W. Va. 307. The right of the jury to weigh the evidence extends to that of both parties. A finding in favor of the defendant is entitled to the same judicial respect as a finding in favor of the plaintiff. In the evidence disclosed by this record, we are unable to find anything so conclusive in its nature that it would have precluded a finding for the defendant.

The finding on the question of liability was in favor of the plaintiff and it is no doubt so well founded in the evidence that neither the trial court nor this court could have disturbed it, if the defendarnt had permitted its motion to set aside to stand. But there was a subsidiary issue in the ascertainment of the amount of the verdict. As to the amount of the recovery, the plaintiff's right depended in part upon the extent of his injury and the probable duration thereof. Although the medical witnesses expressed the opinion that his paralysis is permanent, the

jury knew there had been a considerable improvement in his physical condition. He was a witness in the case and they had an opportunity to form an opinion, from personal observation, of the character and extent of his physical disability at the time of the trial. Interpretation of the written evidence, with the aid of information derived from personal observation, might be very different from what it would be without such aid. The jury had it. The judge who set aside their verdict did not, nor do we. They had his own sworn testimony to his capacity to do a limited amount of manual labor. Comparing his condition at that time with what they were informed it had been previously, and using information derived from observation, they may have arrived at the conclusion that the affliction will not permanently disable him to such an extent as wholly to destroy his earning power. They may have made a large deduction on this account.

On the other hand, they may have arrived at the conclusion in view of his diseased condition, that his expectancy of life and earning power were not normal. Of course, there is a presumption in favor of life and a continuation thereof, as well as of earning power, but that presumption, in the case of a person suffering from an incurable disease, is necessarily limited. Tables of mortality are based upon the normal man and normal conditions. Although, according to some decisions mortality tables are admissible in evidence in cases involving the expectancy of life of a diseased person, they do not have the same probative value as they do in those involving expectancy of life of a normal person. The diseased condition of the person whose expectancy is in question must be considered along with them and allowed force and effect. *Arkansas N. R. Co.* v. *Griffith,* 63 Ark. 491; *Smiser* v. *State,* 15 Ind. App. 519; *Camden & A. R. Co.* v. *Williams,* 61 N. J. L. 642. "Mortality tables do not furnish absolute or conclusive rules for the guidance of either court or jury, but are to be considered with all the circumstances in proof, and weighed accordingly." 8 Ency. Evid. 642. In some jurisdictions, it is held that such tables are not admissible at all, if the person whose expectancy of life is in question is not in normal physical condition. 8 Ency. of Evid. 635, citing Nebraska, Mississippi and Michigan cases. Upon the

evidence, the jury could properly have found the plaintiff's expectation of life and capacity for work was comparatively short. He is not entitled to be compensated beyond the extent of his loss.

If the paralytic affliction was the result of the injury received in the collision, is permanent, and wholly destroys plaintiff's earning power, and his physical condition had been normal at the time of the injury, no doubt the damages awarded by the jury would be inadequate. But the power and right of the jury to cut down the amount that would be recoverable upon the hypothesis just stated, in view of doubt as to the cause of the affliction, their belief as to the extent and duration of the disability and the abnormal physical condition of the plaintiff at the time of the stroke, are put beyond question by the principles to which reference has been made. From this conclusion, it follows that the verdict was erroneously set aside in the court of common pleas and that the judgment of the circuit court reversing that order and rendering judgment on the verdict must be affirmed.

*Affirmed.*