# CHARLESTON.

JOHN G. ST. CLAIR *v.* J. O. JACO *et al.*

Submitted October 30, 1923. Decided November 13, 1923.

1. APPEAL AND ERROR—*Verdict on Conflicting Evidence Should Generally Stand.*

   Where in a trial of an action for personal injuries alleged to have been due to defendants' negligence, upon conflicting oral testimony, the jury returns a verdict for defendants, as a general rule, such verdict should stand. (p. 10).

2.  Same—*Order Setting Aside Verdict, Where Material Evidence Not in Record, Should be Sustained, Unless Wrongful Invasion of Province of Jury Affirmatively Appears.*

But when it appears that a witness testified upon material points from a map which is not made a part of the record in this court, but without which his testimony is not intelligible, the judgment of the trial court setting aside the verdict for defendants and awarding a new trial, on the ground that defendants were guilty of negligence as a matter of law, should be sustained in this court unless manifestly a wrongful invasion of the province of the jury as the triers of the facts affirmatively appears.     (p. 11).

Error to Circuit Court, Taylor County.

Action by John G. St. Clair against J. O. Jaco and others. Verdict for defendants. There was an order setting the verdict aside, and awarding plaintiff new trial, and defendants bring error.

*Affirmed.*

*J. Guy Allender* and *Robinson, Warder & Robinson,* for plaintiffs in error.

*John G. St. Clair* and *G. W. Ford* and *Chas. J. Van Fleet,* for defendant in error.

Meredith, Judge:

Plaintiff sued for injuries received in an automobile accident. The jury returned a verdict in favor of defendants. The court set it aside and awarded plaintiff a new trial on the ground that the evidence shows that defendants, as a matter of law, were guilty of negligence, and therefore liable to plaintiff for his injuries. Defendants assign this as error.

At the time of the injury Herbert W. Dent was driving his car in which were a number of guests, including the plaintiff, from Grafton toward Pruntytown. Defendants were following in a car owned by J. Oscar Jaco, driven by his daughter, Frances. The owner and driver are the defendants. With them also were a number of guests. Both cars appear to have been loaded to capacity. Plaintiff alleges in his declaration that while he was so riding in the Dent car, the defendants approached from behind and signaled to H. W. Dent to

permit them to pass, and that thereupon he turned his car to the right and to the edge of the highway, and as near thereto as he could go with safety, in order that defendants might safely pass, yet the defendants did not do so, but approached the Dent car from the rear at a high rate of speed, driving the Jaco car in a reckless, negligent and careless manner, and that although the highway was of sufficient width for the defendants to have safely passed the car in which plaintiff was riding, yet on account of the high rate of speed in which defendants were operating their car, their car struck the car in which plaintiff was riding and caused plaintiff's injuries. No mention is made of a third car which really caused all the trouble.

It appears that about one and one-third miles out of Grafton defendants approached the Dent car, going in the same direction, near a watering trough. Beyond that point there was a comparatively straight stretch of road for about 1000 feet, where there was a sixteen-degree curve, on a slight crest in the road. Near the trough defendants sounded the horn as a signal to pass; but Dent kept his car near the center of the road. He says he did not hear the signal. Defendants say that Dent at first appeared to veer to his right as though he was going to give the road and then swerved back again to the center; they also say that signals were given at least three times. They proceeded on their way, defendants' car in the rear, until they got within about 250 feet of the curve. Defendants signaled again and they claim that Dent then turned has car to the right and gave them room to pass; but that after their car got up to and slightly ahead of his car, he speeded his car so that they could not get ahead on the right side of the road; that the cars proceeded side by side, defendants' being slightly in advance, a distance of 100 to 150 feet to a point about 100 or 125 feet from the curve, when suddenly there appeared a car coming in the opposite direction, driven by Garfield Heck, at a very rapid rate of speed; that Dent did not slow down his car and defendants, in order to prevent a head-on collision, speeded up their car and turned it to the right; that by reason of defendants being somewhat in advance of the Dent car they could not stop and drop into the rear, and that in this emergency, to keep

from being run down by the oncoming car, they hastened to go ahead of Dent's car. As defendants passed the Dent car, their right rear fender hit the left front wheel of Dent's car. The right wheels of his car at that time were within 18 inches of the outer edge of the paved and concrete roadway. The road was paved with brick 16 feet wide, with a concrete curb twelve inches wide and flush with the brick. There was a berm of earth on each side, about two feet wide, and approximately level with the curb, so that the roadway was probably fit for motor vehicle traffic for a width of about 22 feet. Dent's car, after being hit, swerved over upon this berm and after, going from 27 to 60 feet, turned to the right, went over the bank, through a fence, turned over, finally lighting right side up. The top was crushed and other injuries done to it. Plaintiff was injured. There is a considerable conflict in the evidence upon the material points in the case. We have stated the facts as they appear most favorably from the defendants' standpoint, as the jury found that defendants were not guilty of negligence. Had they accepted plaintiff's version of the occurrence, they would necessarily have found defendants negligent.

The witnesses fairly agree that the ''accident'' occurred at a point between 75 and 100 feet before reaching the apex of the curve; plaintiff's witnesses do not claim to the contrary. And yet, the defendant, Miss Frances Jaco, testifies that when she was rounding ''that curve'' she saw the Heck car coming toward her car and she pulled to the right to avoid hitting it. On cross examination, on being asked: ''How soon after you pulled out and around the Dent car did you see the Heck car?'' she answered ''Not until I got to the curve.'' She further testifies that it all happened ''right in the curve.'' A map showing the stretch of road was used before the jury by witness James A. Sincell, in testifying for the defendants. This blue print was used by him as an engineer when he built the road. It was not made a part of the record and is not before us. His testimony is hardly intelligible without the map. He says that the point of the accident was pointed out to him by defendant J. Oscar Jaco, and that this is 75 or 100 feet back of the sharpest part of the curve. Now whether he means this is where the Jaco car hit the Dent car or whether

that is the point where the Dent car went over the bank, we cannot tell.  He does not say 'which was- the "accident," whether it was the striking of the car or the car leaving the highway and rolling over the bank.  It will be recalled that Dent says his car, after being struck, went along the road with the right wheels on the "berm" a distance of 27 or 30 feet; others say a distance of 60 feet.  But witness Sincell fixes the point marked "X" on the map, representing the place of the accident, as being opposite certain new fence posts, placed in the ground and a "funeral director's sign" placed there.  Then defendant J. Oscar Jaco testifies that these fence posts and the sign are at the point where the Dent car turned over, so that the car left the highway 75 or 100 feet from the apex of the curve.  This being so, the Jaco car hit the Dent car from 27 to 60 feet further back than that point; that is, 100 to 160 feet from the apex or sharp part of the curve.

The circuit court, in a 'written opinion filed in the case, stated its reason for setting aside the verdict in favor of defendants as follows:

> "According to the evidence of Miss Frances Jaco, who was driving the car which caused the accident, she had blowed for the road before reaching the curve and Dent drove his car over to the right giving her the road some distance this side of the curve.  Defendants thereupon undertook to pass the Dent car up grade at the curve, around which they could not see, and in making such attempt was suddenly confronted with another car coming in the opposite direction, and defendant, Miss Jaco, thereupon "stepped on the gas," increasing the speed of her car and turning it also to the right in order to miss the car coming in the opposite direction, and thereby knocked the Dent car over the embankment, causing plaintiff's injury.  We think it was negligence to try to pass the Dent car on the curve around which defendant could not see, and in so doing defendant ran the risk of meeting another car."

In other words, the court found that defendants attempted to pass the Dent car at a point in the road where the view ahead was obstructed, and that such action constituted negli-

gence as a matter of law. Defendants ask that we reverse this ruling. In the light of the evidence, can we do so? That is the only question. The verdict says there was no actionable negligence. The order of the court says that there was. As a general proposition, both are entitled to great respect in this court. Now the first question which arises relative to the verdict must be whether it was arrived at under proper instructions. If it was not, no respect need be accorded to it. Without too much elaboration of the instructions given, our conclusion is that they were not erroneous. Defendants' instruction No. 2 is perhaps the most vital one. It in effect instructs the jury that if defendants without negligence on their part were placed in a position of sudden emergency and of imminent danger in attempting to pass the Dent car, they were not guilty of negligence if, in order to avoid a collision, they chose a course of action dictated by ordinary prudence, though that action resulted in damage to the plaintiff; and that this is true though defendants' action was not the wisest choice that could have been made. This covers every element of the case. Under it the jury necessarily found that defendants were free from negligence in attempting a passage, and that in the emergency which followed they pursued a course justified by the exercise of ordinary prudence under the circumstances. Plaintiff argues that inasmuch as Miss Jaco's testimony indicates that defendants were on the curve when they attempted to pass the Dent car, the negligence on her part was so conclusively established that the instruction was not justified; but we have reviewed sufficient of the evidence to show that the instruction was fully warranted by the facts. The jury clearly resolved the issue of defendants' negligence in favor of defendants; so much for the verdict.

The reason for the court's judgment clearly appears. It must have found that as a matter of fact defendants did attempt to pass the Dent car at a place where they should not have done so, and that this was negligence as a matter of law. The conclusion, therefore, is irresistible that the court and jury held opposite views as to the facts in the case. The question for us, therefore, is which conclusion we are to follow, the verdict of the jury, or the judgment of the court.

If there is one principle firmly established in this state, it

is that a verdict of a jury upon conflicting facts, under proper instructions, will not be disturbed unless plainly wrong, or manifestly against the weight of the evidence. See many cases cited, Vol. I, Cum. Sup. Ency. Dig. Va. & W. Va. Rep. page 386. On the other hand, however, the rule is perhaps equally well settled that the judgment of the trial court on a verdict is entitled to peculiar weight, and that this is espe-°cially true where the order. of the court sets aside and does not approve the verdict. *Reynolds* v. *Tompkins,* 23 W. Va. 229; *Wilson* v. *Ice,* 78 W. Va. 672, 90 S. E. 272; *Shipley* v. *Virginian Ry. Co.,* 87 W. Va. 139, 104 S. E. 297; *Adkinson* v. *Railway Co.,* 75 W. Va. 156, 83 S. E. 291. The reason for this proposition is not only that the trial court has the advantage of this court in its observation of the witnesses and the evidence offered, which would be true whether the verdict be approved or set aside, but, as is stated in many cases, an order setting aside a verdict and awarding a new trial affords opportunity to both parties to again present both sides of the case to the end that justice may be more surely attained. A judgment upon the verdict concludes the matter; a new trial gives further opportunity for appropriate decision.

Of course, the circumstances of each case must determine whether this latter principle, or the principle that the jury's verdict shall be construed as determining the cause, shall prevail. As is stated in *Wilson* v. *Johnson,* 72 W. Va. 742, 79 S. E. 734, the principle which accords peculiar weight to a court's judgment should not "cover the error of the trial court in abusing its reasonable discretion, in awarding new trials by invading the province of legal triers of fact, and because differing from them in the inferences or conclusions drawn from conflicting oral evidence substitute its judgment for the jury. As stated in *Miller* v. *Insurance Co.,* 12 W. Va. 116, the rule is applicable where the evidence is conflicting and the verdict is against the weight of the evidence."

These expressions show the difficulty of determining what principle is to be applied where evidence is conflicting. Evidently, however, the circuit court in this case was very firmly convinced that the fact of defendants' negligence was clearly established, and there is one circumstance, heretofore referred to, which prompts us to apply the doctrine that the

judgment of the court awarding the new trial is to be awarded peculiar respect. We allude to the fact that at the trial two witnesses, James A. Sincell and defendant, J. O. Jaco, testified from a map or print which showed the course and nature of the road at the point of the accident, and which map is not now a part of the record. Sincell pointed out on it the place where he was told the car turned over the bank, and gave other useful information as to distances and locations of objects material to the issue. Unfortunately, however, his testimony, without the map before us, is, as we have said, confusing rather than enlightening. Reading his testimony together with that of Jaco, we might reasonably adopt defendants' view that the Dent car turned over the bank some 75 feet before it reached the sharp part of the curve. However, we cannot say that such is a proven fact, and it may be that the circuit court, with the map and the explaining testimony before it, saw that such physical facts were established by the proof as would warrant its order setting aside the verdict. As we said in *Owen* v. *Power Co.,* 78 W. Va. 596, 89 S. E. 262, "A verdict, supported by oral testimony which is wholly inconsistent with natural laws and physical facts, admitted to be true or established by uncontroverted evidence, showing such testimony to be false, should be set aside as being contrary to the weight of the evidence." Accord: *State* v. *Robert Price,* decided this term.

We are somewhat in the same position as if all of the record were not before us. In *Shrewsbury* v. *Miller,* 10 W. Va. 115, all the necessary facts were not brought to this court for review, and we held that all presumptions should be resolved in favor of the court's judgment, whether it set aside or approved the verdict.

In affirming the court's judgment, however, we must be certain that one point is clear. We have already stated that one reason for sustaining an order setting aside a verdict is to make possible the accomplishment of complete justice on a new trial. If in sustaining the judgment we should be understood to hold that the facts of this case warrant a judgment for plaintiff as a matter of law, defendants would likely be at a severe disadvantage on a new trial. That is not our conclusion. We do not mean to hold on the evidence before

us that defendants as a matter of law were shown to be guilty of negligence.

We affirm the judgment and award plaintiff a new trial.

*Affirmed.*