WINIFERD DANIELS *v.* CRANBERRY FUEL COMPANY

(No. 7037)

Submitted January 26, 1932. Decided February 9, 1932.

*J. W. Maxwell* and *C. R. Harless,* for plaintiff in error.

*J. H. McGinnis,* and *Dillon, Mahan & Holt,* for defendant in error.

LIVELY, JUDGE:

Plaintiff prosecutes error to the judgment of the court below, which set aside a jury verdict of $9,000 in his favor.

Plaintiff was injured in August, 1929, on State Highway No. 21 at a point between Mt. Hope and Beckley where the paved highway, nine feet in width, passes beneath an overhead mine track or tipple maintained by defendant, Cranberry Fuel Company, and supported by bents or timber piers, about eighteen feet apart, which is the width of the highway for vehicular traffc at this point. Driving from Beckley in the direction of Mt. Hope, the road is straight for a distance as one approaches the tipple, but the road curves to the left on the Mt. Hope side, the apex of said curve being at the tipple; and the timbers obstruct the view of the road. According to plaintiff, the timbers supporting the mine track on the east side of the road are located about the

center of a thirty-foot public right of way. Plaintiff, driving his motorcycle in a southerly direction toward Beckley, followed a Chrysler automobile which was about ten feet ahead of him. Homer Ricketts, driving a Jewett car toward Mt. Hope, met the Crysler car just before he (Ricketts) entered that part of the road covered by the trestle, and he stated that when it became necessary to strike either the timbers on his right or the plaintiff, he turned his car to the left and struck plaintiff's motorcycle about the center thereof, inflicting such injury that plaintiff's leg had to be amputated.

Plaintiff, basing his right of recovery on that portion of the state road law relating to obstructions of the public highway, charges that the timber supports on the east side of the road are on the public right of way in violation of the road law, thus constituting a public nuisance and being the proximate cause of his injury. Since the gist of plaintiff's action is based on the statute, our first inquiry is whether the maintenance of the timbers on the right of way was a violation of the state road law.

Under the provisions of chapter 17, article 16, section 1, Official Code, an obstruction is anything which prevents "the easy, safe and covenient use of" the public road for public travel, in which case such obstruction is by the statute declared to be a public nuisance. But, not all obstructions are nuisances *per se*. *County Court* v. *Adams,* 109 W. Va. 421, 155 S. E. 174. The highway is approximately eighteen feet wide at the point where the trestle crosses it. Although plaintiff testifies that the distance between the piers has been widened since the injury, the preponderance of evidence is to the contrary. Engineer Curtis, testifying on behalf of plaintiff, stated the distance to be eighteen feet at the time of trial, but that the road had apparently been widened in "the last year or so;" but witness Knighton stated that he measured the distance between the piers eight years ago, at which time it was eighteen feet two inches (or three inches) between the piers. Numerous persons, living in the immediate vicinity testified that there had been no change in the position of the piers. When asked "Did you see the old pier moved from the location it was in?", plaintiff replied in the negative,

but stated that he had observed from an automobile as he passed the tipple that "there was prints in the dirt where they had their foundation setting on it. They had slipped the foundation back and slipped the pier back." To explain this, defendant's mining engineer stated that reinforcement timbers had been placed on the trestle after the injury "but there has been no movement of any timbers." This is verified by other testimony. That the road is wide enough to permit two cars to pass is evidenced by the statement of witness Carter, a bus driver, who, admitting if he met "a truck it would be a close place to pass" and that he approached the tipple cautiously, stated that he even passed other busses at that point.

The timbers alleged by plaintiff to constitute a public nuisance are situate about the center of the thirty-foot strip of land deeded by the defendant to the county court of Raleigh · County in 1913, when the road then existing was located west of the present road. Several years later, and about the time that the county court of Raleigh County paved the nine-foot roadway between the piers, defendant, at the request of the county road engineer, moved the piers to their present position. To remove the eastern pillar without permission from the road commision would subject defendant to a prosecution for misdemeanor, penalty for which is from $25.00 to $100.00. Official Code, 17-16-6. It must be remembered that this trestle was there before the road was constructed, and the road was laid out by the county authorities with reference to defendant's timbers and placed at the required distance apart, at the expense of the county. Defendant had a right to maintain its trestle over this highway under proper regulations and conditions imposed by the road authorities. There is nothing to show that the county officials thereafter objected to the maintenance of these timbers; and an official of the state road commission, which took over the road as a part of the state highway system, testified that that body did not consider the piers as obstacles to travel. Moreover, the statute making road obstructions public nuisances was not passed until after defendant had placed its piers in the right of way with the consent of the public authorities. It is to be noted

that the statute vests with the road commission or county courts, as the case may be, the power to remove public nuisances within the bounds of the public right of way, so that it would seem that positive asquiescence in the maintenance of the piers as located should be given peculiar weight in determining whether or not they are maintained in violation of the statute. We do not think that the pillars so authorized and placed can be deemed a nuisance *per se* within the meaning of the statute; and under the evidence in this particular case it did not prevent the easy, safe and covenient passage of the public over the road.

Nor can we see how the jury concluded that maintenance of the pier was the proximate cause of the injury. Looking to the facts relating to the injury, we find a conflict between the testimony of plaintiff and that of Ricketts, his witness, whose account is not without pertinent contradictions.

The accident occurred about four o'clock in the afternoon, and the day had been clear and the sun shining. Between the piers and on either side of the paved road were the shoulders of the road measuring about four feet in width (plaintiff's witness Curtis, said three feet on the west side) from the edge of the pavement to the piers. The tipple crossed the road diagonally, so that the eastern pillar extended several feet farther toward Beckley than did the one on the opposite side. According to plaintiff, he approached the trestle on his right side of the road following the Chrysler car, "over to the left fender;" that after the Chrysler car passed through the trestle, the right wheels of that car were on the dirt road; that as the Chrysler car cut to the right, plaintiff did likewise; that he was about three feet from the pier on his right, and that Ricketts' car struck him just as he (plaintiff) was "getting out of the tipple." Grover Smith, riding behind plaintiff, stated that the right wheels of the Chrysler car, when going under the tipple, were about a foot and a half or two feet off the paved road on its side of the road.

Ricketts testified that he met the Chrysler car about the time it came from beneath the trestle; that "it was narrow there, and just as the car came out why I whipped around to the left and just as I went around the car behind why I

hit the motorcycle;" that he had to cut his car to the left to avoid striking defendant's pier on his (Ricketts') right, and that he did not see plaintiff before he struck him because "he was behind the car." According to him, the Chrysler car was on its side of the road; but he charges that the Chrysler car forced him over to a place where it became necessary to cut his car to keep from striking the trestle, although he denies having so stated to defendant's attorney prior to trial. In another portion of his testimony, he places the blame on the motorcycle, stating it had pressed him close to the timbers. This part of his testimony is substantiated by defendant's witness Knighton who stated that, after the accident, Ricketts called his attention to the tracks made by his car, which "run right up as near the post, near the righthand side, as he could get without hitting the tipple." Also, witness Carter, a bus driver, driving in the direction of Mt. Hope saw the accident 100 yards from the place of impact. He stated that Ricketts passed the bus in his car at a speed of thirty or thirty-five miles per hour; that plaintiff "cut his motorcycle out from behind the Chrysler car and the moment he done that why this car struck him." Mrs. Johnson, who saw the accident from the steps of her house, corroborates Carter in that plaintiff attempted to pass the Chrysler car after it had emerged from the trestle, but plaintiff's denial of this is supported by Smith who was riding on the rear seat of the motorcycle, although plaintiff does admit that a short time before he reached the trestle he had attempted to pass the Chrysler but did not because he saw the tipple. Witnesses who went to the scene of the accident immediately after the crash say that the motorcycle was lying on the Beckley side of the trestle about the middle of the road, and according to the evidence of one witness there were marks on the hard surface made by the handle-bars of the motorcycle striking it, which marks scraped the hard road "back towards the tipple." This testimony is uncontroverted, and is convincingly persuasive of Ricketts' version.

In what manner can the injury be attributed to the timbers? The declaration charges that they obstructed the view on either side of the trestle; but plaintiff's view of the road

was obstructed by the Chrysler car, and Ricketts could not see plaintiff for the same reason. Moreover, it should be remembered that driving north (or in the direction in which Ricketts was driving) the road curved to the left. Both Ricketts and plaintiff were familiar with the road and had driven over it on numerous prior occasions; hence, it was incumbent upon each to use such care as the situation·demanded of the ordinary purdent person in approaching the tipple and going under it. Ricketts says that it became necessary for him to strike either the timbers or plaintiff. Why did the timbers become an impediment to his travel? The road was about eighteen feet in width, sufficient for two cars to pass easily, safely and conveniently. Had the jury believed plaintiff, it must have believed his testimony that he was within three feet of the timbers on his right. The handlebars of his motorcycle measured two feet in width. In what way could the timbers on the opposite side of the road by themselves prevent the Jewett car—$67\frac{1}{2}$ inches in width —from passing? The trial judge, with this evidence before him, supplemented by his observation of the witnesses, came to the conclusion in a memorandum made a part of the record, that the proximate cause of the injury was not the pier but it was the negligence of Ricketts or the driver of the Chrysler car (who does.not testify) or the combined negligence of Ricketts and plaintiff; and for those reasons set the verdict aside. The preponderance of the evidence sustains the trial court's conclusion, and the familiar rule of law is applicable, namely, that when a verdict has been set aside by the trial judge, such action is entitled to peculiar respect and it will not be reversed unless plainly erroneous. *Miller* v. *Ins. Co.,* 12 W. Va. 116, 29 Am. Rep. 452; *St. Clair* v. *Jaco,* 95 W. Va. 5, 120 S. E. 188; *Haggar* v. *Transport Co.,* 106 W. Va. 522, 146 S. E. 49. The conflict of evidence between witnesses for plaintiff and those for defendant is whether the motorcycle attempted to pass the Chrysler car at the time of the accident; but, omitting that conflict, we find serious dispute between plaintiff and his own witness, and when we consider

that, together with uncontroverted physical facts, we come to the same conclusion as did the trial judge. Hence, we cannot say that the action of the trial judge was plainly erroneous.

*Affirmed.*