# CHARLESTON.

## STATE *v.* COTTRILL.

Submitted June 13, 1902. Decided December 20. 1902.

| 52 363 |
| 59 199 |

| 52 363 |
| f62 652 |

1. INSTRUCTION—*Error—Judgment.*

When an instruction is incomplete in not going far enough to put the law upon its subject, but other instructions do state the law omitted and taken together they properly state the law upon the subject, no error can be based on the defect of such instructions to reverse the judgment, as the other instructions cure the defect in it. (p. 364).

2. INSTRUCTION.

All instructions given are instructions of the court, regardless of who requests them, and are to be considered together. (p. 365).

3. SELF DEFENCE—*Instructions.*

Where point 1 in *State* v. *Jones,* 20 W. Va. 764, is put in an instruction touching self defence, the second point should be incorporated in it also. (p. 366).

4. INSTRUCTIONS.

It is again held that where instructions clearly and fairly lay down the law upon a subject, it is not error to refuse others to the same effect. The court need not repeat instructions already substantially given. (p. 367).

5. JURY.

Separation of jury referred to. (pp. 367, 368).

Error to Circuit Court, Doddridge County.

Wirt Cottrill was found guilty of murder in the second degree, and brings error.

*Affirmed.*

J. V. BLAIR, JOHN BASSETT, G. W. FARR, and L. W. CHAP-MAN, for plaintiff in error.

The ATTORNEY GENERAL, for the State.

BRANNON, JUDGE:

Wirt Cottrill was indicted in the circuit court of Doddridge County for the murder of James Ball, and was found guilty of murder in the second degree and sentenced to the penitentiary for nine years, and brings his case here by writ of error. The prisoner did not deny the homicide, but relied upon the plea of self-defence. That was the only question before the jury.

The first point and the chief one by counsel for the prisoner is based on instruction four given for the State reading: "The court instructs the jury that according to the law of this State, which is binding upon the jury in this case, if the jury find from the evidence that the defendant shot and killed James Ball, the deceased, and relies upon self-defence to excuse him for such killing, the jury cannot acquit him on the ground of self-defence, unless the defendant has proven by a preponderance of the evidence that such killing was actually done in self-defence."

The complaint is that the instruction does not go far enough to suit the case, does not state the law fully, because it demands of the prisoner that he must, by evidence of his own, show self-defence, and cannot use State's evidence to prove it. As a practical and original question I would incline to say that such instruction is not error, since I do not think that any jury would find against self-defence, if it thought that the evidence of the State alone, or in connection with that of the defence, established self-defence; but I have heretofore acceded to the holding of such an instruction bad, and do not now mean to say that taken alone such an instruction would not reverse. The question of self-defence, when the case turns upon it, is generally close and hard for a jury to decide, and the court cannot be too guardful of the life and liberty of the human being in the manacles. In *State* v. *Johnson and Devinney,* 49 W. Va. 684, this identical instruction was held bad, and we may say that one of perhaps a similar effect was condemned in *State* v. *Mann,* 48 *Id.* 480. The objection was that the instruction might mislead the

jury to think that the prisoner must himself, by evidence introduced by him, sustain the plea by a preponderance, and that the jury could not use the evidence of the State to show the plea true. But if we can see that such danger was averted by other instructions we should not reverse a trial for that cause, as it has been often held that incompleteness in one instruction may be cured by another. *State* v. *Prater* (this term) so holds.

It is true we cannot say this where instructions are inconsistent, because they leave the way uncertain to the jury, *Ward* v. *Ward,* 47 W. Va. 766, but when both can co-exist, the one casting light on the other, each must have its effect, and both be considered like two statutes relating to the same matter; the one adds to the other. "All instructions given are the instructions of the court regardless of who requests them, and are to be considered together." *Gray's Case,* 92 Va. 772. Take this case. Instruction 1 of the State reads: "The jury is instructed that a man in law is presumed to intend that which he does, or which is the immediate or necessary consequence of his act; and that if the prisoner, Wirt Cottrill, with a deadly weapon in his possession, without any or upon very slight provocation, gave to the deceased James Ball, a mortal wound, the prisoner is *prima facie* guilty of wilful, deliberate and premeditated killing; and the necessity rests upon him of showing extenuating circumstances, and unless he proves such extenuating circumstances, or they appear from the case made by the State, he is guilty of murder."

Instruction 6 of the State reads: "The jury are instructed that if they believe from the evidence that Wirt Cottrill, the prisoner, without fault himself was attacked by James Ball, the deceased, in such a manner or under such circumstances as to furnish reasonable grounds for apprehending a design to take away his (Cottrill's) life or to do him some great bodily harm, and that there was reasonable grounds for believing the danger imminent that such design would be accomplished, and that said Cottrill had reasonable grounds to believe and did believe such danger imminent he had a right to act upon such appearance, and without retreating, kill the said James Ball, if he, the said Cottrill had reasonable grounds to believe and did believe such killing was necessary in order to avoid the apparent danger; and the killing under such circumstances was ex-

cusable, although the jury may believe that such appearances were false, and that there was in fact neither design to do him, said Cottrill, some serious injury nor danger that it would be done. But of all this, the jury must judge from all the *evidence and circumstances of the case.* In such case as to the imminency of the danger which threatened the prisoner, and the necessity of the killing in the first instance, the prisoner, Cottrill, was the judge; but he acted at his peril, as the jury must pass upon his action in the premises, viewing said action from the prisoner's standpoint at the time of the killing; and if the jury believe from all the facts and circcumstances in the case, that the prisoner, Cottrill, had reasonable grounds to believe and did believe the danger imminent and that the killing was necessary to preserve his own life or to protect him from great bodily harm, he, Cottrill, was excusable for using a deadly weapon in his defense, otherwise he was not." The prisoner's instruction 1 told the jury that if they believed "from the evidence" certain facts touching self-defence, and said, " but of all this the jury must judge from all the evidence and circumstances of the case;" and further told the jury that "if the jury believe from *all* the facts and circumstances of the case that the prisoner Cottrill had reasonable ground to believe and did believe the danger imminent, and that the killing was necessary to preserve his own life, or to protect him from great bodily harm, he, Cottrill, was excusable for using a deadly weapon in his defence."

Still another instruction for the prisoner, No. 3, instructed that if the jury, "from all evidence," "and from facts and circumstances in the case," believed certain things, then the jury should find the prisoner not guilty. How can it be said with any plausibility that all these instructions did not both allow and bind the jury to consider all the evidence and all the facts and circumstances in the case in passing on the plea of self-defence? To say that the jury was misled upon that matter, and reverse a trial for that cause would be a travesty on criminal justice. All this question would have been avoided, if the State had asked an instruction incorporating both points, 1 and 2 of the *Jones Case.* If in cases of self-defence the State asks the first, it should add the second. There is no inconsistency between Nos. 1 and 4 of the State, as claimed by counsel. *State* v.

*Morrison,* 49 W. Va. p. 217, in the opinion confirms the position here taken. (See postscript note.)

Refusal to give prisoner's instruction 6 is no error. In the first place, its substance and effect were already given in the State's 6 and the prisoner's 1 and 2. These covered the field of self-defence. Why does a plain, fair trial demand so many instructions? They serve only to confuse both court and jury. I have observed that the State often reverses trials by putting in needless instructions. This argument does not apply to an accused; but where an instruction has been already substantially given, it need not be repeated. *State* v. *Bingham,* 42 W. Va. 234. But, moreover, this instruction only requires, for self-defence, that if the prisoner had grounds to believe, and did believe, that deceased intended to kill him or inflict great bodily harm, he lawfully shot Ball, leaving out that he must have reasonable ground to believe, and did believe that danger was imminent, and must believe that the killing was necessary to avoid the danger. The prisoner says that it was error to refuse this instruction: "The jury are further instructed, that if there be, in the opinion of the jury, a substantial conflict in the evidence or circumstances, as to whether the killing was done in self-defence, and the circumstances or other evidence preponderate in favor of self-defence, or if it be equally balanced as to the killing being done in self-defence, the jury ought not to convict either of murder or manslaughter." This was held good in *State* v. *Zigler,* 40 W. Va. 593; but it was overruled in *State* v. *Staley,* 45 W. Va. 792.

The prisoner says it was error to allow to be answered a question put by the State to Horner, which was: "I will ask you what Geo. Cottrill said on the way to the saloon when the shot was fired as to who was shot, or who did the shooting," and he answered: "Mr. Cottril was going down toward the saloon, and I says I hope there is nobody hurt, and he said, yes, Wirt has shot him." The court distinctly ruled that this was only evidence as to George Cottrill's credit, without affecting in any way the guilt or innocence of the accused. We cannot reverse for this matter. Though it touched irrelevant matter, it is not of materiality. The prisoner admitted the killing and that evidence was not material as to that.

The prisoner claims that the verdict ought to have been set

aside because of sepration of the jury. At a dinner recess during the trial the jury, while taking a walk in charge of the sheriff, stopped in a bowling alley, but they did not play, further than that two or three jurors picked up some balls lying at one end of the alley and rolled them down the alley; that they spoke to no one to set up pins or play; that there was a man sixty or seventy feet away from them setting up a few pins, but was not asked to do so by the jurors; that while there two or three people came in the large room, seventy or eighty feet by thirty, but did not come near or communicate with the jurors. The sheriff and deputies were with the jury, in charge of it. No conversation or communication whatever was had by the jurors with any one. All the jurors swear to this. They were there five minutes. It further appears that as they went from the bowling alley, on the street the sheriff said "stop a moment, a man wants to take our pictures," and the jurors and sheriff stopped one or two minutes, and a man took a snap shot picture of them; that they spoke to no one except the sheriff, nor did any one speak to them. The twelve jurors swear to this. . They say that they did not know whether or not the picture took in the prosecuting attorney, W. R. Brown, or any one else, though the picture shows that it included him and others. The affidavit of the jurors says that they spoke to no one, nor did Brown or any one else speak to them. There is no showing at all of any further separation, or of any intercourse, conversation or communication between the jurors and any one else save the sheriff and his deputies. The jurors swear that from the beginning to the end of the trial there was none. JUDGE POFFENBARGER has lately fully reviewed the cases upon this subject, and this renders it unnecessary for me to re-discuss it. *State* v. *Cotts,* 49 W. Va. 615. The law is well settled. It is plain there was no separation. They are not shown to have separated, and were all the time, when in that bowling alley on the lot where the hotel was where they were kept, and at the time the picture was taken, under the eye of the officers. This denies any legal separation in those respects. The sheriff and two deputies confirm the jurors' affidavit, saying that there were but two persons in the alley when the jurors went in, and they at the other end; that two or three persons came, but in another part of the alley; that the sheriffs were in charge of the jury

then and at all times during the trial, and the jurors had no communication with strangers. They say that one of the sheriffs arranged the jurors for the picture, but no one was with or communicated with the jury save the sheriffs. The jurors were down in the street while the prosecuting attorney happened to be coming out of the hotel on his way to the court house, and was not with the jury, but back of them on the porch, and was thus, while waiting a minute, within the scope of the camera. He says he had not a word of communication with the jurors. We do not see that there is anything detracting from a fair trial in this. It seems simply technicality, not substance, though we are expected to discuss it. I think the case of *State v. Clark,* 51 W. Va. 457, (41 S. E. 204), puts the doctrine on this subject on sound basis in holding that separation or misconduct of a jury only raises a presumption of impurity of the verdict, and if that presumption be fully overcome, and it be shown that beyond reasonable doubt the prisoner has not been prejudiced thereby, such separation or misconduct does not vitiate the verdict. First, in this case there was no legal separation or misconduct; and, second, it is clearly shown that what is alleged did not, could not, affect the verdict. An affidavit of Gain tends to show that at noon hour he saw a juror standing on the porch of the hotel where the jury boarded washing and combing his head, and none of the other jurors were in sight on the porch, and he heard the sheriff say "hurry," that the others were in the dining room and they would have to get there; that the dining room door was ten feet from where this juror was standing. Gain also says he saw people mixing up with the jury passing through them and among them around about the hotel. Sherwood, the juror alluded to, says that there was no separation; that he may have been a few feet behind other jurors when going into the dining room, but was in charge of a deputy. It is not shown that any one was in the dining room. Is it possible that a trial is to be reversed for such trivialities? What trial would stand? Do not jurors have to talk to and from the court house, and if they pass people, or people go through them, they in charge, is it cause for reversal? Where is there any affirmative showing of wrong? Are we to jail jurors, keep them out of street and dinning room, wash room and closet? The sheriff was with and in touch of them. McKendree makes an af-

fidavit to show that on an occasion part of the jury was in the dining room of the hotel, part in the wash room and water closet, separated from the dining room by a hallway, and other persons were in the rooms not known to him, that he heard talk, but could not say what was said. He did not say any juror talked. He said the sheriff stood at the dining room door. There he was close to the jurors watching those in these rooms. The jurors were some of them answering calls of nature and the sheriff on guard. McKendree says that two members of the jury whose names he does not know slept and snored during the examination of witnesses. Eleven of the jurors deny this for themselves, and say that no one slept or snored. The other juror died between the April term, when the verdict was found, and the term when sentenced was passed .

There is no argument on the motion for a new trial under the evidence; nor could there be any effective argument made. The prisoner admitted the shooting. The only question was self-defence on the merits. A large volume of evidence was taken, and as to this the case was one peculiarly for a jury. It is idle to suppose that this Court possesses the means of passing upon such a question comparing with those of the jury and circuit judge. A jury is the great right of one charged with crime, but when its verdict comes against him it comes with telling and conclusive force, in the great majority of instances. We could not set aside the verdict in this case on the evidence without abusing our function. We have examined with patience and labor this case, and have written more than was really necessary and finding no error, we are compelled to affirm the judgment.

*Affirmed.*

BRANNON, JUDGE:

As upon a petition for rehearing the State's instruction 4 was again urged for reversal, I make on my own account this postscript note touching it. It is not said that said instruction puts bad law, but that it is incomplete. Reflect that the instruction, so far as it goes, propounds no bad law and is not inconsistent with other instructions, as in *McKelvy* v. *Railroad,* 35 W. Va. 500; but it is claimed that it does not go far enough and tell the jury that it could consider all the evidence in pass-

ing on self-defense.  Thompson on Trials, section 2328, says
that it is a principle "which must never be lost sight of, that
mere *incompleteness* in a charge, that is, partial non-direction
will not be ground of error unless the proper complementary
instructions are requested and refused."  In section 2341, it is
stated as a rule in this country that "mere non-direction, partial
or total, is not ground of new trial, unless specific instructions
good in law, appropriate, to the evidence were requested and re-
fused.  A party cannot by mere excepting to a charge, make it
the foundation for an assignment of error, that it is indefinite
or incomplete.  The rule rests upon the soundest foundation.
The fact of the case come to the mind of the judge as matter of
first impression, and it will often be extremely difficult for him
in the short time allowed for trial before a jury, and in the
midst of such a trial, to prepare a series of instructions appli-
cable to all the hypotheses presented by the evidence.  On the
other hand, counsel are presumed to have studied the case be-
forehand; to come to the court with a fair understanding of the
facts which will probably be proved, and with a full knowledge
of the law applicable to the facts.  It is therefore their duty
to give attention to the charge, and if it omits to give direc-
tion as to the law applicable to any essential feature of the evi-
dence, to call his attention to the omission and request supple-
tory instructions; and where they fail to call his attention to
something which he may fairly be supposed to have omitted
from inadvertance, they ought not to be allowed to complain of
it in an appellate court.  A rule which would allow them to do
so, would be extremely inconvenient.  It would be extremely
inconvenient.  It would multiply new trials and reversals, and
often on grounds which have no connection with the merits."
But without reliance upon this law, though sound, I repeat
that other instructions cured the complaint, and add some au-
thority pertinent to this position.  Instructions are to be con-
strued as a whole.  An incomplete statement of the law in one
instruction may be cured by a complete statement of it in
another, if when the two are read together the court can see
that the jury could not have been mislead by the incomplete in-
struction."  Without approving said instructions in every par-
ticular, it is sufficient to say that taken as a whole they fairly
submit the issues raised by the pleading and the evidence, and

substantially state the law applicable to the case, so that the jury could not have been mislead or the plaintiff in error prejudiced by them." *Washington* v. *Quayle,* 95 Va. 741, 749.

The Virginia courts went still further in *Russell* v. *Well,* 96 Va. 416, holding that, "Although an instruction, standing alone, may have been misleading, the verdict will not on that account be set aside where it appears that the objection thereto was corrected by other instructions." Courts must not annul verdicts of juries, upon fair trial, on mere technicality, and thus defeat the ends of the criminal law. It is a painful duty to condemn to severe punishment it is true; but when one has been convicted by a jury, on fair trial, upon adequate evidence, an appellate court must have a very clear case to justify its reversal. The jury was of opinion, and justly so, that though Ball may have been to blame for assaulting Cottrill, yet that assault was without weapon not immininently, not probably dangerous to life or limb, and that there was no reason why Cottrill should so quickly have recourse to a deadly weapon and do that most dreadful act, take a man's life.