# CHARLESTON.

R. G. MARTIN, ADMR., ETC. v. CULPEPER SUPPLY CO., A CORPORATION.

Submitted April 12, 1921.   Decided April 26, 1921.

1. CORPORATIONS—*Evidence As to Existence of Corporations Held Admissible Without Verified Pleading or Affidavit Denying it.*

Where a corporation is sued it is not necessary for it to file a verified pleading, or affidavit with a pleading denying its

corporate existence, as set out in sec. 41, chap. 125 of the Code, before it will be permitted to introduce evidence to prove that it was not organized and not doing business at the time the cause of action arose, and could not have committed the wrongs complained of in the declaration.    (p. 474).

2.   SAME—*Corporation Purchasing Assets and Assuming Liabilities of Partnership Committing Tort May Not Be Sued Therefor Though Former Partners Own its Stock.*

An action in tort cannot be maintained against a corporation on the ground that it afterwards purchased the assets and assumed the liabilities of a partnership which had committed the tort complained of, although the stock of the corporation is owned by the members of the former partnership. (p. 476).

3.   APPEAL AND ERROR—*Evidence Not Reviewed Where Award of New Trial Affirmed.*

The appellate court will not usually review the evidence where it affirms the order of the lower court awarding a new trial, unless it is necessary to ascertain the correctness of the lower court's action.    (p. 479).

Error to Circuit Court, Grant County.

Action by R. G. Martin, administrator of the estate of John Lear, deceased, against the Culpeper Supply Company. Verdict for plaintiff was set aside, a new trial awarded, and plaintiff brings error.

*Affirmed.*

*Arch J. Welton,* and *Taylor Morrison,* for plaintiff in error.
*L. J. Foreman William MacDonald, Conlen, Brinton & Acker,* and *McClintic, Mathews & Campbell,* for defendants in error.

LIVELY, JUDGE:

Plaintiff, administrator of John Lear, deceased, recovered a verdict for $5,000.00 for the death of his intestate, alleged to have been the result of burns caused by the negligence of defendant corporation in selling the decedent a gallon of gasoline or a mixture of gasoline and coal oil instead of coal oil, and which exploded when decedent attempted to light a fire with it.    This writ of error questions the action of the

trial court in setting aside the verdict and awarding defendant a new trial.

The alleged purchase was made by John Lear on December 13, 1917, at the store of the Culpeper Supply Co. located at Bayard, Grant County, West Virginia, and the explosion occurred about 7 o'clock on the morning of December 25, 1917, Lear having arisen early and gone to the kitchen to build a fire in the cook stove. There were no eye witnesses to the accident and although there is some conflict of testimony by those who viewed the premises shortly after it happened as to the condition of the cook stove in which decedent had attempted to kindle a fire, it is reasonably certain that the kindling remaining in the fire box of the stove was burned or charred, some of the lids and the cross T had been removed and placed on the floor near the stove, and the oil can, which had contained the alleged mixture of gasoline and coal oil, was lying on the floor about three feet from the stove with the spout torn off, the bottom blown out and a hole in the side. The only declaration of deceased as to how the explosion occurred is as follows: "I built the fire and it was not burning good, and I went to pour some more oil on it and there was an explosion and I was burned." This is the only direct testimony on how the accident occurred. The unfortunate man died that night as the result of the severe burns he had received. He was 24 years of age, married and had been engaged in mining coal, his weekly wage averaging $35.00, which he supplemented by working at night in a barber shop.

The defendant denied that it committed the negligent act complained of in the declaration, denied that it sold coal oil, gasoline or any other article at any time to plaintiff's decedent. To support this denial it introduced J. G. Emmons, who stated that he was a stockholder in the defendant company, and that the company was not conducting the store of the Culpeper Supply Company on the day of the sale of the coal oil or gasoline which caused the explosion, and had no interest whatever in the business at that time, but that the Culpeper Supply Company, at the date of the reputed sale of the coal oil or gasoline, was a partnership composed

of L. C., J. G. and J. A. Emmons and I. M. Long, trading under the firm name of Culpeper Supply Company; and that this partnership sold the oil and gasoline; that the charter of the defendant corporation, which bears the same name as the trade name of the partnership, was issued by the State of Delaware in November, 1917, but the company was not admitted to transact business in West Virginia until the 2nd day of February, 1918, and was not organized until the 10th day of January, 1918, when the first meeting of the stockholders was had and the officers elected.    The charter was introduced, showing that it was issued on the 28th day of November, 1917, by the Secretary of the State of Delaware, upon application of L. L. Rimlinger, M. M. Clancy and Clement M. Egner, charter members, and the minutes of the first meeting of the stockholders, bearing date January 10, 1918, were produced, showing the organization was effected on that day, and that the store and business at Bayard, W. Va. (the store from which the oil or gasoline was purchased) and another store and business at Falling Timber, Pa. were then purchased from the copartnership in consideration of the issuance to the copartners of all the stock of the corporation.    A certificate isued by the Secretary of State of West Virginia, dated February 2, 1918, admitting the foreign corporation to hold property and transact business in this state, was admitted in evidence.    The charter, by endorsement thereon, showed that it was admitted to record in the office of the clerk of the county court of Grant County on February 16, 1918.    This evidence, both verbal and documentary, was introduced over the objection and exception of the plaintiff, and the action of the court in permitting this evidence to be introduced is assigned as error, on the theory that, inasmuch as the defendant had not filed a pleading or affidavit denying its corporate existence under sec. 41 of chap. 125 of the Code, it could not deny its corporate existence at the time of the negligence complained of in the declaration, or at any other time.    That section reads: "Where plaintiffs or defendants sue or are sued *** as a corporation, it shall not be necessary to prove *** the existence of such corporation, unless the pleading which puts

the matter in issue be verified, or there be an affidavit filed therewith denying the existence of such corporation.'' The plaintiff contends and insists that, under this statute, defendant having been summoned as a corporation, appeared and plead not guilty as such, and having failed to file a pleading or affidavit putting in issue its corporate existence, is barred from showing that it was not a corporation at the time of the sale of the oil or gasoline, and was not the owner of the store at that time, and that it did not make the sale complained of. We do not so understand the meaning or effect of this statute. The corporate existence is not denied, and could not be denied. At no time after suit was instituted could an affidavit or pleading be filed which would truthfully put in issue existence of the defendant as a corporation. And we do not understand such was the object of the introduction of this evidence. It was to show, and did show, that the defendant did not do the negligent act alleged to have been committed by it in the declaration. It is argued that because the defendant received a charter on November 28, 1917, and afterwards filed and recorded it in the office of the clerk of the county court on February 16, 1918, it thereby led counsel for plaintiff, when the suit was begun, to believe it owned and conducted the store at Bayard in December, 1917, and in all good conscience and fairness it should have filed a pleading denying its corporate existence at the time of the injury, or be precluded from interposing the defense that it was not then in existence, did not own or conduct the store, and did not make the sale. This is not a suit in equity. The statute relied upon does not require the defendant so to do, and we are not aware of any other statute that does. The certificate of admission of the defendant to hold property and transact business was filed and recorded as required by law, in the office of the clerk of the county court on February 16, 1918, showing that the defendant was admitted on February 2, 1918. This was sufficient to put the plaintiff upon inquiry whether this corporation was owning and operating the store at the time of the institution of the suit. The presumption would be that it was not violating the statute by doing business in the state

before admission.    Evidently the plaintiff was misled be-
cause of the fact that the trade name of the partnership and
the name of the corporation was the same, and that the cor-
poration had been chartered in November, 1917, and there-
fore the supposition naturally followed that the corporation
was the owner of the store at the time of the accident, and
conducting the buesiness.  · Under the general issue of "not
guilty" it is surely permissible for a defendant to show
that it did not commit the wrong, if any was committed, and
to show the party who did do so.

The declaration alleges that the defendant corporation,
on the ——day of December, 1917, and for a long time
previous thereto, was the owner of a mercantile store and do-
ing retail business in the town of Bayard, Grant  County,
West Virginia, buying and selling goods etc.    It was not
necessary for plaintiff to prove that the defendant was a
corporation (which was not denied by affidavit or pleading),
but it was necessary to prove that the corporation owned the
store, and, being such owner, committed the wrong as alleged.
This necessary averment the plaintiff entirely failed to sub-
stantiate.    A crude illustration of the contention made may
be appropriate:    John Smith is sued as the maker of a note,
and service of process is had on the wrong John Smith. Is it
necessary for the John Smith brought into court to plead
that he is not John Smith before he can show that he did not
sign the note?-    Or can he show that he is John Smith but
not the one who signed the note, and was not in. existence
when the note was signed?    We perceive no error in the ad-
mission of this evidence.

Plaintiff also asserts that his suit should be maintained and
the verdict upheld, because, although the defendant did not
purchase the store and begin business until January 10, 1918,
it then agreed with the owners of the store that it would take
over the same and assume the debts and liabilities thereof
as of the 2nd day of August, 1917, as shown by the minutes
of the corporation.    If it be true that the corporation con-
tracted to become responsible for this claim of unliquidated
damages, it does not follow that this suit can. be maintained
against it.    The plaintiff must successfully assert his claim

against those who committed the tort. This action is not predicated upon the assumption by the defendant of this liability. The contract was made for the protection and benefit of the former owners. Unless it was for the sole benefit of the plaintiff, he could not maintain any action thereon. *King* v. *Scott,* 76 W. Va. 58. Even if the contract was for the sole benefit of the plaintiff he could not maintain this suit on that ground. There must be a sufficient pleading basing the action on the assumption of the liability by the defendant. It is fundamental that the pleading and proof must correspond. *Riley* v. *Jarvis,* 43 W. Va. 43. Plaintiff must recover, if at all, upon the case made by the pleadings. *Eckles* v. *N. & W. Ry. Co.,* 96 Va. 69. The identity of the members of the former partnership with the stockholders of the defendant corporation is not sufficient to authorize a suit and recovery against the corporation, which is a distinct legal entity. The ownership of the stock may change at any time, but the corporation continues its artificial legal entity and existence. A claim against the stockholders individually or jointly is not an obligation against the corporation, or corporate property.

It is asserted that because the defendant, after having shown that it was not organized nor doing business at the time of the unfortunate accident, proceeded to make furthr defense by showing that the sale of the oil or gasoline was made by a partnership trading under a like name, and by introducing evidence tending to show that by reason of contributory negligence on the part of plaintiff's decedent no liability rested upon any one for the accident, it has made a waiver of its defense that it was not liable because it did not make the sale; in other words, that the defenses are inconsistent. The plea of ''not guilty'' in an action of trespass on the case is broad, like non-assumpsit, and permits the introduction of almost any defense or defenses to show that the plaintiff has no right of action. ''The declaration in this action (case) sets forth specifically the circumstances which form the subject of the complaint. The general issue, not guilty, is a mere traverse or denial of the facts so alleged; and therefore on principle, should be applied only to cases in which the defense rests on such denial. But here a relaxation has taken place,

similar to that which prevails in assumpsit; for, under the plea now in question, a defendant is permitted not only to contest the truth of the declaration, but (with certain exceptions) to prove any matter of defense that tends to show that the plaintiff has no right of action, though such matters be in confession and avoidance of the declaration; as for example, a release given or a satisfaction made.'' Andrews Stephen's Pleading, sec. 118, title ''Trespass on the Case.'' We cannot see that the defendant by continuing its defense by introducing testimony tending to show that a partnership made the sale complained of, and that no one was responsible because of contributory negligence on the part of the deceased, would thereby waive any of its defenses. The different matters of defense are not inconsistent.

Defendant insists that instruction No. 4, given at the instance of the plaintiff, is clearly erroneous, and alone justified the court in setting aside the verdict and granting a new trial. That instruction reads: ''The court instructs the jury that if they believe from the evidence in this case that there was no living witness to the explosion, which resulted in intestate's death, or of the circumstances causing such explosion, the plaintiff is entitled to the presumption that John Lear was exercising due care at said time.'' The criticism of the instruction is that it tells the jury that because there was no living witness then they must find that John Lear was exercising due care and was not guilty of contributory negligence, thus ignoring the silent evidence of the burned kindling, yet in the stove, removed stove lids, condition of the exploded can and where found, etc. It will be observed that the instruction says that the plaintiff is entitled to the presumption that Lear was exercising due care, there being no living witness, but does not say that this presumption could not be rebutted. It does not make the presumption conclusive on the jury, does not bind them. However, the instruction tends to mislead, and if it was the only instruction on the question of the negligence of the deceased immediately contributing to the cause of his death, we would possibly consider it reversible error. But there were other instructions given, notably defendant's instructions Nos. 1, 3, 7 and 8, which fully in-

structed the jury that contributory negligence by John Lear, if deducible from all the evidence and circumstances, would defeat recovery, and that their verdict should be returned accordingly. Defendant's instruction No. 7 expressly tells the jury that if they believe the explosion was caused by John Lear pouring coal oil, kerosene, gasoline, or any other explosive, into the kitchen stove, in which there was a fire, then the jury shall find for the defendant. Instructions must be considered together, and if the court can see that incompleteness in one has been cured by another, and that the jury could not have been misled, it will not disturb the verdict. *State* v. *Cottrell,* 52 W. Va. 363.

To sustain the action of the lower court in setting aside the verdict and granting a new trial, the defendant'asserts that it is clearly shown by the evidence, and circumstances surrounding the explosion, that John Lear's negligence contributed to the accident. It asserts that it is conclusively shown that he poured the oil or gasoline on a fire in the stove—an act of gross negligence. Inasmuch as the order is sustained upon another ground it is unnecessary, and perhaps improper, to review the evidence and pass upon its sufficiency to sustain the verdict. New evidence may be produced and a different case presented on the new trial. It is the usual practice not to review the evidence where a new trial is awarded, unless necessary. *Browning* v. *Hoffman,* 86 W. Va. 468, 103 S. E. 484.

We affirm the order awarding a new trial.

*Affirmed.*