## CHARLESTON.

STATE *v.* SARAH LILLY

(No. 6159)

Submitted April 30, 1929.     Decided May 7, 1929.

*Dillon, Mahan & Holt*, for plaintiff in error.

*Howard B. Lee*, Attorney General, and *W. Elliott Nefflen*, Assistant Attorney General, for the State.

LIVELY, JUDGE:

Convicted upon a charge of aiding and abetting in the commission of a rape upon one Myrtle Richmond and sentenced to serve ten years in the penitentiary, the defendant, Sarah Lilly, obtained this writ of error.

It appears from the record that for two or more years the defendant, a widow, and her four children had been living with one Henry Holdren, during which time the relations between her and Holdren had been very intimate. On July 25, 1926, Holdren and the defendant went to the home of the prosecutrix, Myrtle Richmond, a girl fifteen years of age, and secured her services as a domestic in the Holdren home on Madams Creek. The defendant and Holdren had represented to the prosecutrix that they were husband and wife.

The home in which the prosecutrix was employed consisted of three rooms, a kitchen and bedroom downstairs and a bedroom upstairs. Holdren and the defendant occupied a bed in one corner of the downstairs bedroom, and the prosecutrix and a six-year old daughter of the defendant slept in another

bed in the opposite end of the room. About a week after the prosecutrix had taken up her duties as a domestic Holdren attempted to have intercourse with her on several nights, after all the occupants of the house had retired. The prosecuting witness fought off his attacks, but finally on the third night succumbed thereto. She had made outcries on each of these occasions, but the defendant who was occupying a bed at the other end of the room did not offer to help her in her distress. On the day after the attack by Holdren she told the prosecutrix not to be afraid of him, that he was hurt when he was a little boy "and God sent him here to do that way." She further threatened to shoot the prosecutrix if the latter attempted to make her escape. Holdren attempted to assault the prosecutrix on the two succeeding nights, but these attacks failed. Finally, on the third night after the first rape by Holdren, the latter again tried to have intercourse with the prosecutrix. He was unable to accomplish his purpose and called to the defendant to assist him. The defendant came over to the bed and held the girl's hands while he assaulted her. According to the prosecuting witness, Holdren left the house the next day to work for a neighbor, and during his absence she attempted to escape, but was detected in the effort by the defendant, who sent word to Holdren. However, before his arrival, she succeeded in making her way to a neighbor's home about half a mile away. The facts of the assault were made known to the prosecuting attorney and a warrant was issued for Holdren. About two o'clock that night the officers went to the latter's house and arrested him. At that time, the defendant asked the officers why they did not arrest her, stating that she was as guilty as Holdren. The officer replied that he had no warrant for her arrest.

The first assignment of error is that the trial court erred in refusing to permit the defendant to file her special plea, pursuant to section 11, chapter 148 of the Code, that on the trial of Holdren, jointly indicted with her, she had fully and truly answered all questions touching her connection with or knowledge of the commission of the crime charged in the indictment. Section 11, chapter 148, Code, reads as follows: "No person called as a witness for the state on the trial of

any person for an offense mentioned in either of the two next preceding sections, shall be excused from answering any question which may be asked him as such witness, and which would be otherwise legal and proper, on the ground that the answer to such question would or might degrade him, or expose him to punishment; but no such witness who shall fully and truly answer all such questions as may be asked him touching his connection with, or knowledge of such combination or conspiracy, or of the commission of the offense charged in the indictment, in pursuance of such combination or conspiracy, shall thereafter be prosecuted or punished for the same offense mentioned in the indictment upon which the accused is being tried.'' The two preceding sections referred to in section 11 are sections 9 and 10 relating to conspiracy to inflict injury to person or property, known as the Red Mens' Act. It will be noted that section 11 provides that no person called as a witness for the state on the trial *''for an offense mentioned in either of the two preceding sections''*, etc. In order that immunity might be afforded to one testifying, the testimony must have been given under an indictment for a violation of the Red Mens' Act. By no rule of construction can the defendant be brought within the protection afforded by that section. *Commonwealth* v. *Barnett*, 245 S. W. (Ky.), 874, 876.

The next assignment of error is that if it was not proper to file the special plea of the defendant, then it would not have been proper to allow the state to introduce evidence as to the acts, conduct and declarations made by Henry Holdren out of the presence of and hearing of the defendant, as detailed by the prosecuting witness. With but two exceptions as to non-prejudicial matters, no objection appears of record as to the alleged incompetent testimony. Therefore, this assignment of error cannot be considered. *Hinton Milling Co.* v. *Milling Co.*, 78 W. Va. 314, 317.

The third assignment of error is that the state was permitted to show, over the objection of the defendant, that when the defendant, in company with Holdren, had visited the houses of witnesses or when seen by them at church or other places in the neighborhood, she had exhibited no fear or

duress at his hands. It is claimed that the introduction of this testimony was error, as it referred to isolated occurrences bearing no relation in point of time to the offense charged. The main reliance of the defendant, who admitted that she had assisted Holdren in committing the rape upon the prosecutrix, was that she had done so because of Holdren's duress. According to her, this deathly fear of Holdren existed from the time she had moved into her present neighborhood a few months before the assault was made upon the prosecutrix. The alleged improper testimony was given by neighbors who had known her during that time. It was sufficiently close to be of assistance to the jury in determining her state of mind when she aided Holdren in the commission of the crime charged.

The defendant further asserts that she was greatly prejudiced by a separation of the jury during the course of the trial. One of the defendant's attorneys made affidavit that on two occasions there had been a separation of the jury. During one of these, part of the jury was permitted to go into the jury room while the others stayed in the court room. The other separation occurred just before the resumption of court after the noon recess, on which occasion part of the jury was permitted to go in the jury room and a part was permitted to remain in the court room. It is averred that those who remained in the court room were within hearing distance of spectators who were discussing the trial of the case. Affidavits were made by the deputy sheriff who had charge of the jury and ten of the jurors themselves. It appears from these affidavits that while the separations may have occurred as detailed by the affidavit of defendant's attorney, they were not prejudicial to the defendant. It is shown by these affidavits that on one occasion during the trial, several of the jurors, in the custody of a deputy sheriff, had gone to the lavatory in the jury room while others had stayed in the court room, the court then being on the bench; that on the other occasion referred to in the affidavit of defendant's attorney, the deputy sheriff, before permitting any of the jurymen to go into the lavatory, made an examination to see that a door leading into the jury room from another point had been

closed and locked, and that the deputy sheriff stood in the doorway between the jury room and the court room where he could see and hear the jurors. It is further shown that the jurors who remained in the court room on that occasion were not in hearing distance of the spectators who may have been present. Ten of the jurors made affidavit that they had not discussed the case with anyone during either of these occasions, nor had they heard anyone else discussing the same. It is apparent that any presumption that may have arisen as to any prejudice to the defendant by reason of these alleged separations of the jury, was overcome by this evidence. *State* v. *Cottrill,* 52 W. Va. 363; *State* v. *Barker,* 92 W. Va. 583.

Error is assigned in the failure of the court to give the defendant's instruction No. 1, relative to the existence of criminal intent in the mind of the defendant at the time of the commission of the alleged offense. This instruction was covered by defendant's instructions Nos. 13 and 14, which included within their scope the question of defendant's intent to commit the crime charged.

Defendant's instruction No. 2, refused, on good character, was substantially covered by defendant's instruction No. 15. Defendant's instruction No. 5 was based on the presumption of coercion which exists when a wife acts in conjunction with her husband and in his presence in the commission of a crime. There was no evidence in this case of a marriage or even of a common law marriage, although several of the neighbors testified that the defendant and Holdren had been living as husband and wife. The defendant does not claim that she had lived with Holdren under a promise of marriage. She simply says that ''we went to housekeeping''. This presumption of duress arising out of the marriage relation is not applicable in the case of a mistress. 30 C. J. 792. ''And where there is no proof of marriage, the presumption will not arise, and mere reputation or co-habitation is insufficient to raise the presumption unless the jury find from such reputation that a marriage existed.'' 30 C. J., section 420½, page 792.

The court refused to give defendant's instruction No. 7, which would have told the jury they should not arbitrarily

disbelieve defendant's testimony merely because she was on trial charged with the offense set out in the indictment against her, but should weigh and consider her evidence under the same rules for weighing and considering evidence of other witnesses.

The purpose of the instruction was to tell the jury that although a witness is on trial for the crime about which he is testifying, the fact of alleged criminality on his part, will not warrant them in disregarding his testimony. We can see no objection to this instruction, for it reminds- the jury of what is plainly apparent from the fact that her testimony was admitted. If her testimony could not be considered, but arbitrarily ignored, simply because she was the defendant, there would be no reason for admitting it. There would be no occasion for a defendant in a criminal case to testify. Why do a vain thing? The fact that her evidence was admitted would impel the jury to consider it and not arbitrarily refuse it, and to give it such weight as under all the facts and circumstances the jury might think proper. By defendant's instruction No. 8, they were told that they might disregard all or any part of the testimony of any witness they believed had testified falsely to any material fact, or give it such weight as they believed it entitled to; and they were told that they were the sole judges of the weight of testimony and credibility of witnesses; and in weighing the testimony and credibility of any witness, his bias, prejudice, *or interest, if any, in the case,* demeanor on the witness stand, and all other facts and circumstances should be considered. Why should the jury be told that they could not arbitrarily disregard or disbelieve her evidence, when they were told that they were the judges of the weight and credibility to be given *any* witness, and that in arriving at such weight and credibility, they should take into consideration the interest of the witness, if any, in the case? In view of all the instructions, we can perceive no prejudicial error in the refusal of defendant's instruction No. 7. *State* v. *Shimoka,* 251 Pac. (Wash.), 290, 292; *People* v. *Dyer,* 147 Pac. (Cal.), 217, 218; *People* v. *Trudell,* 189 N. W. (Mich.), 910, 911. The defense was first, immunity from prosecution, (a technical and unsubstantial

point); and, second, participation in the crime under fear and duress of Holdren, and without criminal intent. On this second point of defense, the only tenable one, the jury was the arbiter of fact, and they were instructed in the law with reasonable fullness and clarity for arriving at the determination of fact.

Defendant's instruction No. 11, as offered, would have told the jury that "if any juror after considering all of the evidence and circumstances in this case entertains a reasonable doubt as to the guilt of the accused of the offense with which she is charged, it is his duty not to surrender his convictions and find the defendant guilty merely because the other jurors may be of a different opinion. The instruction as amended and given by the court left out the words *"and find the defendant guilty."* We are unable to see that the defendant has been prejudiced by the amendment of this charge.

The last contention of the defendant that the verdict is contrary to the law and the evidence, is untenable. The evidence amply justified the verdict.

The judgment will be affirmed.

*Affirmed.*