EUGENE LUNSFORD, INFANT, *etc. v.* CANNON BALL TRANSIT COMPANY *et al.*

(No. 7296)

Submitted September 27, 1932. Decided October 4, 1932.

*J. M. Jordan, W. E. Whitt,* and *J. C. Cantrell,* for plaintiff in error.

*Hogg & Crawford,* for defendants in error.

LIVELY, JUDGE:

The trial court set aside a verdict in favor of plaintiff for error in instructions and directed a new trial; and plaintiff prosecutes error.

The suit is for personal injuries to plaintiff and the declaration charges that on September 26, 1931, plaintiff, a child about three years old, was, of right, walking across a state road, Route 82 in Pike County, Kentucky, and while so walking that one of the buses owned and operated by defendant through its employee Fife was driven on said road in a negligent, careless and reckless manner so that it struck plaintiff and permanently injured him. No demurrer was interposed. Defendant plead the general issue.

The accident occurred about seven o'clock in the evening of September 26, 1931, at the eastern part of Sharondale where there were about eleven dwellings each approximately 37 feet from the road, five on the right side of the road as the bus traveled in the direction of Williamson, West Virginia, and six on the other side, in the second of which plaintiff lived with his parents. The father of the child was on the right of the road, as the bus approached, immediately opposite his dwelling, talking to his neighbor, Elias Dotson, and there were three small boys on that side of the road near them and one of them rolled a tire or hoop across to the opposite side of the road as the bus approached; and, according to plaintiff's witness, Lilly Nix, who was sitting on her porch about 213 feet from the place of accident, barely got across the road ahead of the on coming bus, when plaintiff, who was on the left side (the side of his resident), came up the bank onto the road and started across it and was struck by the bus; or, according to defendants' witness, ran into it as it passed. Plaintiff claims that the child was about three of four feet out on the hard-surface when the bus was about fifty feet away, and was struck by the front part of the car; while de-

fendant claims that the child came up the bank suddenly and ran into the side of the bus as it passed.

While the declaration does not charge any specific act of negligence, such as excessive speed, failure to give warning, failure to keep proper lookout for pedestrians or the like, the plaintiff's claim of negligence is that the child was out on the hard-surface in time for the driver to have seen it and avoided hitting it had he kept a proper lookout, and that he was driving on the wrong, or left-hand side, of the road, there being no obstructions on the right side to prevent him from driving there. It appears that the road curves to the left as the scene of accident was approached by the bus, and was elevated by a fill about three and one-half feet high above the surface of the surrounding ground, and that looking from the place of accident toward the curve (from which bus approached) there was an unobstructed view of the road for a distance of about 375 feet.

The chief witness for plaintiff's theory was Mrs. Nix, who was sitting on her porch 213 feet away and whose attention was directed to the accident by the little boy rolling the tire or hoop across the road, and she was watching to see if he got across ahead of the oncoming bus. She says that the child had barely got across, when plaintiff attempted to cross in the opposite direction and had gotten out on the road four or five feet when the oncoming bus was about fifty feet away. It was ''dusk dark'', the headlights of the bus were on (although she did not remember that they were on), and she was looking from a distance of 213 feet or more towards the bus as it approached. The father, talking to Elias Dotson, had his attention attracted by hearing one of his boys yell: ''Go back, Eugene.'' He testified that: ''Just as I looked I saw Eugene coming over the bank. I hollowed at him and looked down the road to see if there was any danger coming down the road. I cast my eye back up the road and noticed the bus about fifty or sixty feet from him. By the time I got my eye back to him it was making so much speed it looked to be about ten or fifteen feet. I seen it was going to catch him and I just shut my eyes like that. By the time I opened my eyes again, I could see right under the front of the bus and saw the child

laying in the edge of the road.'' The child's brother, Earle, asked to tell what he saw, testified: ''Well, I was standing over there just kindly down on the edge of the bank. I looked up about fifteen feet from me and seen the bus coming. Eugene he was standing, I just seen the top of his head, and then when he got up on the bank, he got about three, he was within about three or four feet to the edge of the hard-surface and started kindly down the road. I seen the bus and it struck Eugene, the left-hand front fender and left bumper.''

Elias Dotson, a witness for defendant who was talking to the father and saw the accident, said the bus was twenty-five or thirty feet away when the child came ''up from the ditch'', and kept on coming; that the bus did not hit the child with the front part, or he would have seen it. ''It was bound to have hit on the other side somewhere.'' The hard-surface of the road was about seventeen feet and about four feet of berm on each side. The bank up which the child came was about three and one-half feet high and the bank on the other side was about six feet high. The driver of seven years' experience said he was keeping a lookout, saw the boys on the right of the road, and had his car under control to protect them should they move in danger, that he did not see the child, and never knew an accident had occurred until some one hollowed on the outside and a like exclamation came from some one in the bus, when he stopped in twenty-five or thirty feet distance and moved back to where the boy was hurt. He was running from twenty to twenty-five miles per hour. Another witness or so for plaintiff estimated the speed up to 45 miles. There were five passengers in the bus. Some of them testified that they were watching the road and could clearly see it and that they did not see the child in front but felt an impact. All say that the impact appeared to be against the side of the car.

The evidence has been reviewed and the substance given because one of the grounds of motion for setting aside the verdict was that it was contrary to the clear preponderance of the evidence. The court, in its discretion, could have based its action on that ground, for it is apparent that the child suddenly appeared either in, or at the side of the road

at a time and place where it was either very difficult or impossible to avoid the accident. But the court has not set aside the verdict on that ground, and if there is reversible error shown, this court usually does not review the evidence where a new trial is awarded, unless necessary to do so in order to reach a conclusion as to the correctness of the order under review. *Browning* v. *Hoffman,* 86 W. Va. 468, 103 S. E. 484; *Martin* v. *Supply Co.,* 88 W. Va. 471, 107 S. E. 183; *Pallotto* v. *Paper Co.,* 106 W. Va. 60, 144 S. E. 720. In *Browning* v. *Hoffman, supra,* we held in the ninth point of the syllabus: "On a writ of error to a judgment awarding a new trial, the appellate court, after having ascertained that the verdict for plaintiff was properly set aside for error in the trial, other than refusal to direct a verdict for defendant, if any, will not ordinarily enter upon an inquiry as to the sufficiency of the evidence to sustain the verdict returned and set aside."

So we come to the point of error on which the court acted, as set out in the order, namely, the error in plaintiff's instruction No. 1. This instruction reads:

"It was the duty of the defendant's driver, at the time and place referred to in the evidence, to have his bus under reasonable control, to operate it at a reasonable rate of speed having regard for traffic conditions and the use of the highway, and to keep a lookout for persons and vehicles upon the highway. It was also the duty of the defendant's driver, at the time and place referred to in the evidence, to operate said bus in a careful manner with due regard for the safety and convenience of pedestrians upon said highway and to drive on the right side of such highway where possible unless the left side of said highway was clear of all other traffic or obstruction and presented a clear vision for a distance of at least 150 feet ahead, and if you believe from the evidence that the plaintiff, Eugene Lunsford was in or near the path of the bus and that he was seen by the driver or could have been seen by him in the exercise of a reasonable look out duty as above set out, then, unless it was evident that the plaintiff was aware of the approach of the said bus, and out of danger, it became the further duty of the driver to give a warning signal

of the approach of the bus, to bring his bus under control, to regulate its speed and to exercise ordinary care so as to avoid injuring the plaintiff, and if you believe from the evidence that he failed in the performance of any one or more of said duties and by reason of such failure, if any there was, the said bus was caused to run against or strike the said Eugene Lunsford, the law is for the plaintiff and you will so find, but unless you so believe from the evidence, you will find for the defendant.''

While this instruction is broad in its scope and sets out about nine duties the driver had to perform, under the Kentucky statute, and tells the jury if he failed in any of them then the jury shall find for plaintiff, and may have been confusing in its application to the facts here shown; we find that in *Golubic* v. *Rasick*, 39 S. W. 513, decided by the Kentucky supreme court on May 9, 1931, a similar instruction was found to be erroneous, which instruction told the jury that if they believed from the evidence that the boy in that case was near the path of the truck and was seen or could have been seen by the driver in the exercise of a reasonable lookout duty, and the driver failed to sound warning of the approach of the vehicle, then the law was for plaintiff and the jury should so find. In discussing the error, the court said:

''Children not in the path of the truck, or in the street, may run in its way and the driver of a car seeing children in the street, or near it, should take the proper steps for their protection if, under the circumstances, he should anticipate that they would get in the street and in the way of the car. In the instruction after the words 'as set out above' and before the words 'then it became the further duty', these words should be inserted in the instruction, 'if in the exercise of ordinary care the defendant under the circumstances should have anticipated that he would get in the path of the truck.' ''

The Kentucky court's reasoning is sound. There would be no duty to sound warning unless in the exercise of reasonable care the circumstances would warrant anticipation that the child would enter into a zone of danger. Ordinarily, the

construction which the Kentucky court gives to its own statute is controlling upon this and other courts.

Where the trial judge has found error which, in his judgment, calls for setting aside the verdict, this court will not reverse his judgment of error, unless it appears to be clearly wrong. It may be well to quote our holding (by Judge Poffenbarger) in *Levine Brothers* v. *Mantell*, 90 W. Va. 167, 173, 111 S. E. 501, as follows:

"To the argument that the error committed in the giving of this instruction was harmless and, therefore, did not justify the setting aside of the verdict, it suffices to say its sufficiency for such purpose was a question upon which the court below had to pass and render its decison. This adjudication, like all others of trial courts, must stand, unless it is found to be erroneous. As was held in *Hodge* v. *Charleston Interurban Railway Co.*, 79 W. Va. 174, 90 S. E. 601, there is no discretionary power in a trial court to grant a new trial, in the absence of legal ground therefor. But an error in the trial discovered by the judge or brought to his attention on a motion for a new trial, constitutes a basis for the exercise of his judicial power, and there is no total absence of legal ground therefor. Having found this, he may invoke and use, in addition thereto, his general knowledge of the case, obtained by observation of the parties, witnesses and jurors and their appearances, demeanor and conduct throughout the trial. His judgment based upon the error and such knowledge is entitled to a high degree of respect, in the appellate court, and the judgment or ruling will be sustained in cases and under circumstances not justifying award of a new trial, by the appellate court whose knowledge of the case is derived from the printed record alone. Upon this ground, it is frequently held, that a stronger case must be made out in the appellate court for a new trial than is required to sustain the action of the trial court, in awarding it. *Shipley* v. *The Virginian Railway Co.*, 87 W. Va. 139, 144, 104 S. E. 297; *Coleman* v. *Barrett*, 61 W. Va. 237, 56 S. E. 385; *Black's Adm'r.* v. *Thomas*, 21 W. Va. 709; *Miller* v. *Insurance Co.*, 12 W. Va. 116; *Wilson* v. *Fleming*, 89 W. Va. 553, 109 S. E. 810. Although this court, looking at the dry records, has never granted a new trial for the error in giving an in-

struction like the one now under consideration, this rule precludes reversal of the order complained of in this case, error in it not being clearly apparent." The order is affirmed. *Affirmed.*